# THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADAM WILLIAMS and CATIESE WILLIAMS, Individually and as Parents and Natural Guardians of NW and KW, their minor children, Plaintiffs | : : : : : | CIVIL ACTION - LAW |
| | : | NO. |
| vs. | : : | |
| JERSEY SHORE AREA SCHOOL DISTRICT; JERSEY SHORE AREA SCHOOL DISTRICT BOARD OF DIRECTORS; BRIAN T. ULMER, Individually and as Superintendent of JERSEY SHORE AREA SCHOOL DISTRICT; STEVEN KEEN, Individually and as Principal of JERSEY SHORE AREA SENIOR HIGH SCHOOL; ELIZABETH SEAGRAVES, Individually and as Assistant Principal of JERSEY SHORE AREA SENIOR HIGH SCHOOL, Defendants | : : : : : : : : : : : : : : : | JUDGE: ELECTRONICALLY FILED JURY TRIAL DEMANDED |

## COMPLAINT

1

1.      Plaintiffs, Adam Williams and Catiese Williams, are adult individuals and natural parents and guardians of NW and KW, their minor children, who at all times relevant hereto resided within Defendant Jersey Shore Area School District located within the Middle District of Pennsylvania.

2.      Defendant, Jersey Shore Area School District ("JSASD"), is a public school district formed pursuant to the laws of the Commonwealth of Pennsylvania, which receives federal financial assistance, acting through and governed by its Board of Directors and Superintendent, whose District Office is located at 175 A&P Drive, Jersey Shore, Lycoming County, Pennsylvania, 17740, within the Middle District of Pennsylvania.

3.      Defendant, Jersey Shore Area School District Board of Directors ("Board"), is the duly elected School Board, pursuant to the laws of the Commonwealth of Pennsylvania, and highest ranked local governing body, and ultimate decision-making authority, of Defendant JSASD, which may be located at the JSASD District Office, 175 A&P Drive, Jersey Shore, Lycoming County, Pennsylvania, 17740, within the Middle District of Pennsylvania.

4.      Defendant, Brian Ulmer, is an adult individual and, beginning in or about June 2020, the Superintendent and highest ranked and ultimate decision-making administrative official of Defendant JSASD, who may be located at the

JSASD District Office, 175 A&P Drive, Jersey Shore, Lycoming County, Pennsylvania, 17740, within the Middle District of Pennsylvania.

5.     Defendant, Steven Keen, is an adult individual and Principal and highest ranked administrative official on site of Defendant JSASD High School ("High School"), who may be located through the JSASD District Office, 175 A&P Drive, Jersey Shore, Lycoming County, Pennsylvania, 17740, within the Middle District of Pennsylvania.

6.     Defendant, Elizabeth Seagraves, is an adult individual and Assistant Principal of the High School, who may be located through the JSASD District Office, 175 A&P Drive, Jersey Shore, Lycoming County, Pennsylvania, 17740, within the Middle District of Pennsylvania.

7.     At all times relevant hereto, NW and KW were enrolled as students in JSASD.

8.     This action is brought pursuant to the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§2000d, et seq. ("Title VI"), regarding racial discrimination, harassment and retaliation.

9.     This Court has jurisdiction over this case pursuant to 28 U.S.C. §§1331 and 1343.

10.    Defendants were found doing business within the Middle District of Pennsylvania, and a substantial part of the events or omissions giving rise to the claims occurred within the Middle District of Pennsylvania.

11.    Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391.

12.    NW and KW are biracial, with their father, Plaintiff Adam Williams, being White, and their mother, Plaintiff Catiese Williams, being African American.

13.    Plaintiffs and their minor children moved from Maryland to within Jersey Shore Area School District in or about December 2018 when Plaintiff Adam Williams was assigned to the Army National Guard Recruiter position in Lock Haven, Pennsylvania.

14.    Pursuant to Pennsylvania law, Plaintiffs, NW and KW had a property interest in, and were entitled to receive, a free and full education in Defendant JSASD.  22 Pa. Code §12.1.

### JSASD and Board Policies

15.    Defendants JSASD and Board enacted Policies and Procedures regarding racial discrimination, harassment, and retaliation, and bullying including, inter alia: Board Policy 103 Discrimination/Title IX Sexual Harassment Affecting Students; Discrimination Complaint Procedures; Board Policy 248 Unlawful Harassment; Board Policy 249 Bullying/Cyberbullying; and relevant pages of a

Student Handbook.  See, Exhibits A to E attached hereto and referred to herein as though fully set forth.

16.    These Policies and Procedures specifically cite legal authority pursuant to, inter alia, U.S. Const. Amend XIV Equal Protection Clause, 20 U.S.C. §§1681 et seq., 20 U.S.C §7118, 42 U.S.C §§1981 et seq., 42 U.S.C. §§2000d et seq., 34 CFR §§100 et seq., 18 Pa. C.S.A. §2709, 24 P.S. §1302-A, 24 P.S. §1303.1-A, 24 P.S. §1310, 24 P.S. §5004, 43 P.S. §§951 et seq., 22 Pa. Code §§12.1, 12.2, 12.3 and 12.4, and the Office for Civil Rights – Resources for Addressing Racial Harassment.

17.    Defendants, via these Policies and Procedures, recognized and confirmed Defendants' affirmative legal duties to address racial discrimination, harassment and retaliation, and bullying, within JSASD, i.e.:

> 17.1    "provide an equal opportunity for all students to achieve their maximum potential through the programs and activities offered in the schools without discrimination on the basis of race;"
>
> 17.2    maintain "a safe, positive learning environment for all students that is free from discrimination by providing all students course offerings, counseling, assistance, services, employment, athletics and extracurricular activities without any form of discrimination;"

17.3   "maintain an educational environment in which harassment in any form is not tolerated;"

17.4   "prohibit[] all forms of unlawful harassment of students…by all district students;"

17.5   "prohibit[] all forms of bullying by district students;"

17.6   "ensure adequate nondiscrimination procedures are in place, to recommend new procedures or modifications to procedures and to monitor the implementation of the district's nondiscrimination procedures;"

17.7   "provide training for students and employees regarding all aspects of unlawful harassment;"

17.8   establish "[r]easonably prompt timeframes…for completing each step of the discrimination complaint procedures, including timeframes for filing and resolving appeals;"

17.9   "promptly notify the Title IX Coordinator of all reports of discrimination;"

17.10  have "the Title IX Coordinator…promptly contact the complainant regarding the report to gather additional information as necessary, and to discuss the availability of supportive measures;"

17.11  inform "[t]he complainant...about the Board's policy on discrimination" and "relevant information on resources available in addition to the discrimination complaint procedure, such as making reports to the police, [and] available assistance...including counseling resources;"

17.12  "promptly implement appropriate measures to protect the complainant and others as necessary from violation of the policy throughout the course of the investigation;"

17.13  "provide to the complainant factual information on the complaint and the investigative process...and the right to file criminal charges;"

17.14  document, if "resolved to the satisfaction of the parties, the nature of the complaint and the proposed resolution of the matter, have both parties sign the documentation to indicate agreement with the resolution and receive a copy, and forward it to the Compliance Officer;"

17.15  have "[t]he Compliance Officer...contact the complainant to determine if the resolution was effective and to monitor the agreed upon remedies, and...document all appropriate actions;"

17.16  "conduct an adequate, reliable and impartial investigation;"

17.17 if the allegations "involve a violation of criminal law…promptly inform law enforcement authorities about the allegations;"

17.18 "direct[] that complaints of harassment shall be investigated promptly, and corrective action be taken when allegations are substantiated;"

17.19 if there will be any delay in the process, provide "[w]ritten notice of the delay or extension and the reason for such action…to the complainant and the respondent, and document[] with the records of the complaint;"

17.20 "[n]otify the complainant and the accused of the progress at appropriate stages of the procedure;"

17.21 "consider the record as a whole and the totality of circumstances in determining whether a violation of Board policy has occurred, recognizing that persistent and pervasive conduct, when taken together, may be a violation even when the separate incidents are not severe;"

17.22 "prepare and submit a written report" within certain time frames including "a summary of the investigation, a determination of whether the complaint has been substantiated as factual, the information and evaluation that formed the basis for this

determination, whether the conduct violated Board Policy…and of any other violations of law or Board policy which may warrant further district action, and a recommended disposition of the complaint;"

17.23 inform "[t]he complainant and the respondent…of the outcome of the investigation, for example, whether the investigator believes the allegations to be founded or unfounded, within a reasonable time of the submission of the written investigative report, to the extent authorized by the Family Educational Rights and Privacy Act (FERPA) and other applicable laws" and "the recommended disposition of the complaint;"

17.24 "take prompt, corrective action designed to ensure that such conduct ceases and that no retaliation occurs….[and] promptly take appropriate steps to prevent the recurrence of the prohibited conduct and to address the discriminatory effect the prohibited conduct had on the complainant and the district education program or activity….document the corrective action taken and, where not prohibited by law, inform the complainant…[and] follow up by assessing the effectiveness of the corrective action at reasonable intervals;"

17.25 provide an appeal procedure if "the complainant or the respondent is not satisfied with a finding made pursuant to these procedures or with recommended corrective action;"

17.26 "prepare a written response to the appeal within" certain timeframes and provide a copy of the response to "the complainant, the respondent and the investigator who conducted the initial investigation;"

17.27 "annually provide the following [and other harassment and criminal conduct] information with the Safe School Report:

1.    Board's Bullying Policy.

2.    Report of bullying [and other harassment and criminalconduct] incidents.

3.    Information on the development and implementation of any bullying prevention, intervention or education programs;"

17.28 "develop, implement and evaluate bullying prevention and intervention programs and activities."

18.    In addition to their legal duties regarding Safe School Reports, 24 P.S. §13-1303-A, Defendants also had the legal duty to report information regarding racial discrimination, harassment and retaliation, and bullying, and certain criminal

conduct, to the United States Department of Education via the Civil Rights Data Collection program.  20 U.S.C. §3413; 34 C.F.R. §100.6.

19.    Defendant JSASD and Defendant Board delegated to JSASD's Superintendent, such as Defendant Ulmer, the ultimate administrator decision-making authority and responsibility for administering and supervising implementation and adherence to the above Policies and Procedures, the individuals charged with conducting investigations and making reports and recommendations, and the ultimate dispositions and corrective actions taken, including the consideration of any appeals, and training JSASD personnel regarding the same.

20.    Defendant JSASD and Defendant Board delegated to a Building Principal, such as Defendant Keen, in conjunction with the Title IX Coordinator, and pending consultation with, disclosure to, and review by the Superintendent, and the Superintendent's ultimate authority, the authority to investigate, report on, and make recommendations regarding the disposition and corrective actions to be taken regarding racial discrimination, harassment and retaliation, and bullying.

21.    Under certain circumstances, Defendant JSASD and Defendant Board permitted delegation to an Assistant Principal, such as Defendant Seagraves, in conjunction with the Title IX Coordinator, pending consultation with, disclosure to, and review by the Superintendent, and the Superintendent's ultimate authority, the authority to investigate, report on, and make recommendations regarding the

disposition and corrective actions to be taken regarding racial discrimination, harassment and retaliation, and bullying.

22.    Defendants affirmatively held out and represented these Policies and Procedures to the United States and Pennsylvania Departments of Education, students, parents, staff, and the general public, as reasonable, necessary and required policies and procedures to address racial discrimination, harassment and retaliation, and bullying, within JSASD, and that the same would be adhered to.

23.    Plaintiffs, NW and KW relied upon this representation to their detriment.

24.    Upon information, knowledge and belief, the reports and other documents required by the above Policies and Procedures, including the identities of those reporting racial discrimination, harassment and retaliation, and bullying, and those alleged to have engaged in the same, to the extent the same were created as required, would have been maintained regarding all of the events involving NW, KW and others, so that they would have been available for review and consideration during investigations by Defendants for each subsequently reported event, and in determining a reasonable disposition and response to the events.

25.    The combined actions and inactions of Defendants Board, Ulmer, Keen and Seagraves, as described more fully below, combined with their levels of authority within Defendant JSASD, created and maintained a pattern, practice,

policy and custom of Defendant JSASD of deliberate indifference to racial discrimination, harassment and retaliation, and bullying, and directly and/or impliedly excusing, allowing, supporting, furthering, facilitating and promoting the same.

## Fall 2019 events

26.    During the fall of 2019, while NW was a student at the JSASD Middle School, several fellow students made racially motivated and harassing comments to, and/or in the presence of NW, including, but not limited to: (a) they wanted to sell him on the slave stage; (b) they wished they could travel back in time so that they could own him as a slave and whip him; (c) he only eats watermelon and drinks Kool-Aid; (d) referred to him as a monkey and made monkey noises at him; (e) told him he was only good at sports because he is Black; (f) told him he could only run fast because he is Black.

27.    Plaintiffs and NW reported the above to the Middle School Principal and Assistant Principal and the School Resource Officer.

28.    At the suggestion of the Middle School Principal, meetings were held with NW and the racially motivated and harassing students, accompanied by one student who had apologized.

29.    The Middle School Principal and Assistant Principal told Plaintiffs that the students' parents would be contacted.

30.     Plaintiffs neither heard nor received anything further from any Defendant or other representative of JSASD regarding these events.

### Late summer/early fall 2020 events

31.     During the 2020-2021 school year, NW was a member of the High School freshman football team.

32.     During the late summer/early fall of 2020, during football workouts, several students, including at least one who had made certain of the above comments in the fall of 2019, told NW that he was only good at sports because he was Black.

33.     Plaintiffs reported this to the JSASD Athletic Director in the fall of 2020, who said she would investigate.

34.     The Athletic Director later told Plaintiffs that nothing was founded.

35.     Plaintiffs neither heard nor received anything further from any Defendant or other representative of JSASD regarding these events.

36.     Due to the racial discrimination and harassment, NW felt compelled to change from the freshman to the varsity football team.

### March 2021 event

37.     During March 2021, KW was a student at the JSASD Middle School.

38.     During class, a fellow student called KW a "N*****."

39.     KW reported this to the Middle School Principal and Assistant Principal.

40.     Plaintiffs were not contacted by any representative of JSASD.

41.     After school, when KW got off the school bus, she was visibly upset and told Plaintiff Adam Williams what had happened.

42.     The next morning, Plaintiffs and KW met with the Principal, Assistant Principal, and School Resource Officer.

43.     Subsequently, a Zoom meeting was held with the student's mother who apologized, and the student apologized to Plaintiff Catiese Williams and KW.

44.     The Assistant Principal then informed Plaintiffs that they were forming an ethics committee and wanted KW to be a part of it and prepare ideas and speaking points for a subsequent committee meeting which was scheduled.

45.     KW prepared a presentation.

46.     The purported ethics committee meeting was continually rescheduled and subsequently never occurred.

47.     Plaintiffs neither heard nor received anything further from any Defendant or other representative of JSASD regarding these events, or creation of an ethics committee or similar committee.

48.     Due to the racial discrimination and harassment, the lack of creation of the ethics commission, and the lack of any other reasonable action by Defendants, KW felt compelled to leave JSASD and was enrolled in Commonwealth Charter Academy.

49.     Upon information, knowledge and belief, JSASD, the Board and Defendant Ulmer were aware of KW's leaving JSASD due to the above.

### September and October 2021 events

50.     During the 2021-2022 school year, NW was a student at the High School.

51.     In or about September 2021, certain of the students who previously had made some of the above-described racially motivated and discriminatory and harassing statements, called NW a "N*****" numerous times, made comments about hanging NW, such as, "remember back in time when your people didn't do what they were supposed to do and we would hang them," and told NW he could only do the things he did because he is Black.

52.     In or about October 2021, four students directed the word "N*****" at NW while he was walking down the hallway of the High School.

53.     Plaintiffs reported the September and October 2021 events and the previous events to Defendant Seagraves.

54.     Defendant Seagraves said she would investigate and discuss the matter with Defendant Ulmer and Defendant Keen.

55.     Approximately two days later, Defendant Seagraves called Plaintiff Catiese Williams and stated that, even though on video, they were unable to identify

the four students in the hall because they were wearing masks and there were multiple students in the hallway at the time.

56.    Defendant Seagraves did not describe any other investigatory steps that may have been taken.

57.    Defendant Seagraves suggested that if something like that should happen again, NW should make a gesture at the school video camera so that they could better pinpoint exactly when it was happening.

58.    Plaintiff Catiese Williams stated that that was not a feasible option.

59.    Defendant Seagraves stated there was not anything else Defendants could do.

60.    Defendant Seagraves did not address the September 2021 events with Plaintiffs.

61.    Plaintiffs also reported the September and October 2021 events to Defendant Ulmer and Defendant Keen.

62.    To date, despite Plaintiffs' requests, Defendants have not offered or permitted Plaintiffs or NW to review the video, or any screenshots, so that they may assist in identifying the students or what had occurred during the October 2021 hallway event.

63.    Plaintiffs neither heard nor received anything further from any Defendant or other representative of JSASD regarding the September 2021 events.

64.    As of on or about November 9, 2021, Plaintiffs had neither heard nor received anything further from Defendants or other representatives of JSASD regarding the October 2021 hallway event.

65.    On or about November 9, 2021, Plaintiffs discussed with Defendant Ulmer all of the above events.

66.    In spite of the above JSASD and Board Policies, Defendant Ulmer said that he was not aware of most of it.

67.    Defendant Ulmer said, inter alia: (a) he would discuss the events with Defendants Keen and Seagraves and follow up on their investigations; (b) he would meet with NW; (c) he would reach out to an African American coach employed by JSASD to be a potential mentor for NW; (d) he would develop a plan to retrain staff to identify, report and address harassment; (e) he would follow up with Plaintiffs by the end of the week.

68.    Upon information, knowledge and belief, no plan for retraining, or actual retraining, occurred.

69.    On or about November 10, 2021, Defendant Ulmer told NW that the four students in the October 2021 hallway event were identified, but because they were wearing masks, they were unable to determine who were actually saying "N*****."

**November 10, 2021 Event**

70.     During homeroom on November 10, 2021, a student stated the following, with the first letters forming an acronym for "N*****," at NW: "Nice, Intelligent, Great, Giant, Excellent, Respectful."

71.     The student then approached a whiteboard and began writing the letters "N-I _," and the homeroom teacher told the student to, "Stop, I know where you're going with that."

72.     Plaintiff Catiese Williams left a message on Defendant Ulmer's voicemail about the event at approximately 3:30 p.m.

73.     As of 10:00 a.m. the next day, Plaintiffs had not heard anything from Defendant Ulmer or anyone at JSASD, and went to Defendant Ulmer's office; however, Defendant Ulmer was not in, so they met with Defendants Keen and Seagraves.

74.     The Plaintiffs discussed all of the above events with Defendants Keen and Seagraves, as well as what had occurred at their above-described meeting with Defendant Ulmer.

75.     In spite of the above JSASD and Board Policies, and Defendant Ulmer's having stated he would discuss events with Defendant Keen and Defendant Seagraves, Defendant Keen stated he was unaware of many of the details.

76.     The Plaintiffs requested a meeting that day with the homeroom teacher.

77.     Defendant Keen initially refused, stating that parent/teacher conferences were only for addressing academic issues, but ultimately relented and a meeting was scheduled for 3:20 p.m. and ultimately held that day.

78.     Defendants Keen and Seagraves told Plaintiffs that Defendant Ulmer had misunderstood that the four students in the hallway had been identified.

79.     To date, Plaintiffs have neither heard nor received anything further from Defendants or other representative of JSASD regarding the October 2021 hallway event.

80.     NW was then brought into the meeting and reported that another African American student, a minor, hereinafter "AB," was being racially harassed in school as well, describing: (a) students would take AB's food and make him perform like a monkey in order to earn the food back; (b) students would take AB's food and eat all of it except for a banana; (c) students called AB "N*****" continuously; (d) students told AB that they wanted to sell him, whip him, starve him, and ship him like a slave; (e) students racially harassed AB about his dark skin complexion, lips, eyes, ears, and said that he looks like a monkey; (f) if lights were off in the cafeteria or classroom, students would say "Where's AB" because of his dark complexion and it being dark in the room; (g) students told AB that he is only good at sports because he is Black; (h) students teased AB because he was adopted by White parents.

81.    NW identified the students who were saying the above, including several whom NW had reported concerning previous events.

82.    Defendant Keen asked for time to look into all of the information as it was the first time he had heard most of it.

83.    Plaintiff Catiese Williams replied that, in her opinion, they were out of time, her child was being harassed, the school had taken long enough doing nothing about it, that NW did not feel safe and did not trust the adults in the building to protect him, and neither did Plaintiffs.

84.    Defendant Keen asked that Plaintiffs give him until the end of the week to update them on his progress.

85.    On or about the morning of November 12, 2021, Plaintiff Adam Williams requested that NW be removed from that homeroom as soon as possible.

**November 12, 2021 event**

86.    On or about November 12, 2021, AB reported to Defendants that a student, whom NW had previously reported concerning previous events, called AB a "N*****."

87.    At or about 3:21 p.m., Defendant Keen called Plaintiff Catiese Williams saying that he had met with NW, he was being moved to another homeroom, and that he was continuing to look into what had been discussed.

88.    Having heard nothing further by on or about November 15, 2021, Plaintiff Catiese Williams called Defendant Ulmer for an update, and left a message.

89.    Defendant Ulmer returned the call, and said he would look into the new events.

90.    On or about November 16, 2021, Defendant Ulmer called Plaintiff Catiese Williams and said he had spoken with Defendant Seagraves who had informed him that consequences were issued to certain students, and that Defendant Ulmer would keep Plaintiff Catiese Williams updated on any progress.

<u>**November 18, 2021 events**</u>

91.    On or about November 18, 2021, certain of the students whom NW had previously reported made statements and accused NW of over-exaggerating the racial events, that he had started all of the racial things at the school, that he was just getting people in trouble because the school is not racist, that the racial stuff was fake, and students whom NW had reported had not done anything.

92.    Plaintiff Adam Williams met with Defendant Keen, and Plaintiff Catiese Williams joined on speakerphone.

93.    Plaintiffs told Defendant Keen what had occurred, and Plaintiff Catiese Williams told Defendant Keen that NW felt targeted and unsafe.

94.    Plaintiffs and Defendant Keen agreed to meet, along with NW, the next morning at 7:45 a.m. to discuss what had happened.

95.    Defendant Keen showed Plaintiff Adam Williams a statement from a student regarding what had happened in homeroom, and Defendant Keen stated to Plaintiff Adam Williams that "NW needs to just worry about himself."

96.    Plaintiff Adam Williams told Defendant Keen that that was not how they had raised NW, and that NW would not allow someone else to be harmed and stay quiet about it.

97.    On or about the morning of November 19, 2021, Plaintiffs and NW met with Defendants Keen and Seagraves.

98.    For the first time, Defendant Keen had NW fill out discrimination report forms.

99.    Defendants had never before had Plaintiffs, NW or KW fill out discrimination report forms, nor review any such forms drafted as a result of their reports.

100.    Defendants suggested changing NW's schedule, and Plaintiffs asked why NW should be inconvenienced when he was not the problem.

101.    In spite of the above JSASD and Board Policies, Defendant Keen said that they could not request that someone else's child be moved, and that Defendants did not have the right to change another student's schedule.

102.    Defendant Keen asked, "What do you want to happen?  What are you looking for?"

103.   Plaintiff Catiese Williams stated, "We want you to follow your policy and act accordingly."

104.   Defendant Keen responded, "You as in me or who?"

105.   Plaintiff Catiese Williams responded, "You as in everyone, the School District as a whole, you are all one entity and none of you have done what you should have."

106.   Defendant Keen responded, "Ok."

107.   To date, Plaintiffs have neither heard nor received anything further from Defendants or other representative of JSASD regarding the November 18, 2021 events.

### December 13, 2021 events

108.   On or about December 13, 2021, NW found the word "N*****" carved in large, easily visible letters, into the cafeteria table at the place where NW customarily sat, and was known to sit, to eat lunch.

109.   NW had never seen the word carved into the table before.

110.   NW took a picture of the same.

111.   Plaintiff Catiese Williams and NW reported this to Defendant Keen on or about December 14, 2021, in the morning, and showed him the picture.

112.  Defendant Keen said that he would investigate, but that it may be difficult due to "network issues" with the school cameras in the cafeteria and elsewhere.

113.  Defendant Keen said that Plaintiff Catiese Williams would hear from him later that day.

114.  As of on or about December 17, 2021, Plaintiffs had heard nothing further from Defendants or any other representative of JSASD.

115.  On or about December 17, 2021, Plaintiff Catiese Williams called Defendant Keen for an update.

116.  Defendant Keen stated that he had spoken to some students but was not able to get any information, and he had two more he would like to speak with that day.  He indicated that everyone seemed perplexed that he was asking about the incident, that they did not know when it happened, and it could have even happened last year.

117.  Upon information, knowledge and belief, the carving could not have occurred as long ago as the previous year and gone unnoticed.

118.  Plaintiff Catiese Williams asked, "Are you picking up on a pattern that we are reporting incidents and you seem unable to do anything about anything?  Are tables being moved each night and put back in the morning?"

119.   Defendant Keen said that he was doing what he could within policy, he could not arbitrarily punish students, he did not want this happening at the school, and that tables were only moved when the floors were cleaned.

120.   Plaintiff Catiese Williams stated that NW had not seen the word on his table the day before, and he had first seen it as described above.

121.   Plaintiff Catiese Williams stated, "The fact is that you think that what I'm asking you to do is ridiculous.  I'm asking you to actually investigate and punish those responsible.  Why didn't you ask us to fill out an incident report?  Have you officially documented this or do you just have what you scribbled on your notepad the morning I came in?"

122.   Defendant Keen stated, "I'm doing what I can.  I did document it and I document my interviews with the students and I'll fill out the report I need to when my investigation is done."

123.   Plaintiff Catiese Williams asked if the cameras in the cafeteria were working.

124.   Defendant Keen said that the cameras were working, but that they did not have access to footage due to network issues.

125.   Later that day, Defendant Keen, with copies to Defendant Segraves and Defendant Ulmer, sent Plaintiff Catiese Williams an e-mail stating, "I had the word removed from the table this afternoon once I returned.  The pictures [that I took of

the table] are attached.  I plan to speak with more of the students tomorrow.  I need to get a complete list of students who sit at that table with NW.  I spoke with a few others this afternoon from a different lunch, but they did not have anything to offer.  I will continue investigating this tomorrow."

126.    To date, despite Plaintiffs' requests, Defendants have never offered nor permitted Plaintiffs or NW to view the videotapes, or any screen shots, so that they may assist in identifying what had occurred in the cafeteria.

127.    As of January 18, 2022, Plaintiffs had neither heard nor received anything further from Defendants or other representatives of JSASD regarding the December 18, 2021 cafeteria table event.

### January 18, 2022 event

128.    On or about January 18, 2022, a student showed NW a picture of a Ku Klux Klan member on his phone.

129.    NW asked what that had to do with him, and the student said, "I don't know.  You just needed to see it."

130.    Plaintiff Catiese Williams reported the event to the School Resource Officer, and informed him of the other events.

131.    Contrary to the above JSASD and Board Policies, the School Resource Officer told Plaintiff Catiese Williams that none of the events described above were

officially reported to him and that he had not been asked to investigate anything regarding the matter prior to that day.

132.  On or about January 18, 2022, Plaintiff Catiese Williams met with Defendant Ulmer.

133.  Defendant Ulmer asked what Plaintiffs wanted the School Resource Officer to investigate outside of the Ku Klux Klan and cafeteria table events.

134.  Plaintiff Catiese Williams replied, "Everything….I have been patient and my patience is wearing thin.  I have refrained from outing [you] on Facebook and the media, but again, I'm getting really tired of nothing being done.  It is unfair that my child has to miss school because you cannot control the other children."

135.  Defendant Ulmer stated that he agreed with her, that he had brought their concerns to the Defendant School Board, but there had not been any real discussion about the matter and he was trying to educate them on what was happening.

136.  Plaintiff Catiese Williams told Defendant Ulmer that he "needed to try harder."

137. Defendant Ulmer said he had turned everything from their investigations over to their Solicitor after winter break, and that the last he had heard was that their Solicitor had asked Plaintiffs for a meeting and Plaintiffs did not respond.

138.   Plaintiff Catiese Williams told Defendant Ulmer that that was incorrect, that Plaintiffs wanted Defendants to provide what information they could before a meeting so that any meeting may be productive, but they had not received anything.

139.   After this discussion to date, Defendants did not provide any additional information to Plaintiffs, nor extend an offer for a meeting with any JSASD personnel or the Board.

140.   Plaintiff Catiese Williams told Defendant Ulmer that it was ridiculous that a proper investigation was not done, that at the very least they should have been concerned with the destruction of school property, let alone the word that was written on the cafeteria table, she was extremely disappointed in Defendants' lack of protection for her child, that she had not spoken out publicly, and at this point what else did he want her to do.

141.   Defendant Ulmer thanked Plaintiff Catiese Williams for not going public, said that he understood, and thanked her for speaking with him.

142.   Plaintiff Catiese Williams told Defendant Ulmer that for NW's safety, Plaintiffs needed to look at other options, so not only had they had to pay for a lawyer, but now they were moving funds to pay for tuition to send NW to a new school so he could be safe and get an education.

143.   Defendant Ulmer agreed that NW needed and deserved a safe place to get an education.

144.   The School Resource Officer called Plaintiff Catiese Williams later that day regarding the Ku Klux Klan event, saying that there was not enough to press harassment charges at the time, but that he had documented it.

145.   The School Resource Officer also said he was looking into the cafeteria table event, and that Defendant Keen had sent him an e-mail that he had viewed cafeteria video from December 9, 10, and 13 and didn't see anything.

146.   The School Resource Officer said that NW needed to report things directly to him even if it meant going over the head of the Principal, and that previously he had not done anything because nothing had been reported.

147.   Plaintiff Catiese Williams replied that everything had been reported.

148.   The School Resource Officer responded that they could not discuss what goes on with other students, so just because Plaintiffs did not know of anything occurring didn't mean that nothing had happened.

149.   On January 18, 2022, Defendant Ulmer disseminated a message via the JSASD website to the "Jersey Shore Community," sparked by negative behavior by parents and/or other spectators at a recent high school basketball game, describing how parents and spectators should properly behave at athletic events, including: "Not to intimidate or ridicule the other Team and its fans;" "a ticket is a privilege to observe the contest, not a license to verbally assault others and be generally obnoxious;" "show respect for the opposing players, coaches, spectators, and

support groups. Treat them as you would treat a guest in your own home;" and "Be a positive role model through your own actions and by censoring those around you whose behavior is unbecoming."

150.  In spite of all of the above events and reports of racial discrimination, harassment, and retaliation, and bullying, neither Defendant Ulmer nor any of the Defendants ever disseminated such a message, through the JSASD website or other means, to the "Jersey Shore Community" or anyone else regarding the racial discrimination, harassment and retaliation, and bullying, that was occurring at JSASD and as had been reported as described above.

151.  In spite of all of the above events and reports of racial discrimination, harassment, and retaliation, and bullying, neither Defendant Ulmer nor any of the Defendants ever convened or attempted to convene a presentation or further training for the student body or staff or members of the community regarding racial discrimination, harassment and retaliation, and bullying, generally, or that was occurring at JSASD and as had been reported as described above.

152.  To date, Plaintiffs have neither heard nor received anything further from Defendants or other representative of JSASD regarding the above events.

153.  The above-described events were motivated by Plaintiffs', NW's and KW's race, and constituted racial discrimination, harassment, and retaliation, and bullying.

154.   The racial discrimination, harassment and retaliation, and bullying, took place under circumstances where Defendants exercised substantial control over the discriminators, harassers and retaliators and the context in which the racial discrimination, harassment and retaliation, and bullying occurred.

155.   Defendants had actual knowledge of the racial discrimination, harassment and retaliation, and bullying.

156.   The racial discrimination, harassment and retaliation, and bullying, were severe, pervasive, and objectively offensive.

157.   Defendant Ulmer, by his above actions and inactions, ignored and/or violated Defendant JSASD's and Defendant Board's enacted Policies and Procedures regarding racial discrimination, harassment, and retaliation, and bullying, and otherwise violated Plaintiffs', NW's and KW's rights under the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983, and Title VI, by, inter alia:

157.1   Failing or refusing properly to supervise or provide appropriate training to Defendants Keen and Seagraves, and other JSASD personnel, regarding the JSASD and Board Policies and Procedures, and appropriate responses to reports of racial discrimination, harassment and retaliation, and bullying;

157.2    Failing or refusing properly to document Plaintiffs', NW's and KW's reports of racial discrimination, harassment and retaliation, and bullying;

157.3    Failing or refusing properly to notify, involve and coordinate in conjunction with the Title IX Coordinator;

157.4    Failing or refusing properly to have the Title IX Coordinator contact Plaintiffs, NW or KW about the reports and gather further information;

157.5    Failing or refusing properly to discuss with Plaintiffs, NW or KW the availability of supportive measures;

157.6    Failing or refusing properly to ensure that adequate nondiscrimination procedures were in place;

157.7    Failing or refusing properly to recommend or put into place new procedures or modifications regarding racial discrimination, harassment and retaliation, and bullying, and monitor the implementation of the same;

157.8    Failing or refusing properly to train and/or retrain students and employees;

157.9    Failing or refusing properly to monitor and provide technical assistance to individuals involved in managing informal reports and formal complaints;

157.10   Failing or refusing properly to follow prompt timeframes for investigating and documenting and reporting Plaintiffs', NW's and KW's reports of racial discrimination, harassment and retaliation, and bullying;

157.11   Failing or refusing properly to provide Plaintiffs or NW with written notice of any delays and the reason(s) for the same, nor documenting the same;

157.12   Failing or refusing properly to inform Plaintiffs, NW and KW about the Board's policies on discrimination;

157.13   Failing or refusing properly to promptly implement appropriate measures to protect Plaintiffs, NW or KW, or others, from policy violations during any investigations;

157.14   Failing or refusing properly to provide Plaintiffs or NW with timely information concerning the factual information on the complaints and the investigative process;

157.15   Failing or refusing properly to inform Plaintiffs, NW or KW of their right to file criminal charges;

157.16    Failing or refusing properly to provide Plaintiffs, NW or KW with information on resources available, such as making a report to the police and available assistance including counseling resources;

157.17    Failing or refusing properly to document any informal "resolutions" and have Plaintiffs, NW or KW sign the same;

157.18    Failing or refusing properly to contact Plaintiffs, NW or KW to determine if any such resolution was effective, and monitor any such remedies;

157.19    Failing or refusing properly to conduct adequate and reliable investigations;

157.20    Failing or refusing properly to inform law enforcement about violations of criminal law;

157.21    Failing or refusing properly to inform Plaintiffs or NW of the anticipated dates for completion of investigative reports, and any changes to the anticipated due dates;

157.22    Failing or refusing properly to create proper and timely written reports of the investigations;

157.23    Failing or refusing properly to consider the record as a whole or the totality of the circumstances;

157.24   Failing or refusing properly to inform Plaintiffs or NW of the outcome of investigations or recommended dispositions within a reasonable time or, in some cases, at all;

157.25   Failing or refusing properly to take prompt, corrective action designed to ensure that such conduct ceased and that no retaliation occurred….[and] promptly taking appropriate steps to prevent the recurrence of the prohibited conduct and to address the discriminatory effect the prohibited conduct had on Plaintiffs, NW and KW and the district education program or activity;

157.26   Failing or refusing properly to inform Plaintiffs or NW of the corrective actions taken;

157.27   Failing or refusing properly to follow up by assessing the effectiveness of the corrective actions;

157.28   Failing or refusing properly to inform Plaintiffs, NW or KW of any appeal procedure;

157.29   To the extent Defendant Ulmer considered that Plaintiffs, NW or KW may have appealed any findings or corrective actions, failing or refusing properly to prepare a written response to the appeal within certain timeframes and provide a copy of the response to Plaintiffs, NW or KW;

157.30   Failing or refusing properly to allow Plaintiffs or NW to view any videos or screenshots so that they may assist in determining what had occurred in the hallway and cafeteria events;

157.31   Failing or refusing properly to create an "ethics" or similar commission;

157.32   Failing or refusing properly and accurately to inform Plaintiffs, NW and KW of his awareness of certain events;

157.33   Failing or refusing properly and accurately to inform Plaintiffs, NW and KW whether the students involved in the hallway event had been identified;

157.34   Failing or refusing properly to send any messages similar to the message to the "Jersey Shore Community" about the racial discrimination, harassment and retaliation, and bullying;

157.35   Failing or refusing properly to fully inform and educate Defendant Board regarding the racial discrimination, harassment and retaliation, and bullying, the progress of any investigations, and any corrective measures taken;

157.36   Failing and refusing properly to take timely, appropriate and reasonable action to investigate or otherwise determine what had occurred, and remedy the situation;

157.37   Responding in a clearly unreasonable manner to address the racial discrimination, harassment, retaliation and bullying;

157.38   Having actual knowledge that the efforts, and lack of efforts, to attempt to mediate the racial discrimination, harassment, retaliation and bullying were inadequate and ineffective, but continuing to engage in those same methods, or failures to act, to no avail;

157.39   Knowing that what had or had not been done in response had not sufficed, and failing or refusing properly to try other reasonable alternatives such as, inter alia:

157.39.1   additional training or retraining of students and staff;

157.39.2   communicating with the "Jersey Shore Community" as had been done regarding the basketball game incident;

157.39.3   conducting presentations and/or assemblies for staff and/or the student body;

157.39.4   creating an "ethics" or similar commission;

157.39.5   disseminating educational materials to the staff and/or student body;

157.39.6    enlisting the aid and advice of, and presentations by, any entities who specialize in racial discrimination, harassment and retaliation, and bullying, in schools;

157.39.7    providing information, education or guidance to the public through Board meetings and announcements;

157.39.8    taking stricter disciplinary or corrective actions;

157.39.9    facilitating and overseeing interaction between Plaintiffs and NW, and those whom they reported and their parents, regarding what had occurred;

157.39.10    providing further information to Plaintiffs and NW so that a productive meeting with Defendants may occur;

157.39.11    offering or having a meeting with Plaintiffs, NW and KW after providing what information could be provided;

157.39.12    offering Plaintiffs, NW and KW an opportunity to address Defendant Board;

157.39.13    involving law enforcement;

157.39.14    having an independent review conducted of what had occurred and the actions taken;

157.39.15    reinforcing the staff and students' strict adherence to the Policies and Procedures;

157.39.16    amending Policies and Procedures;

157.39.17    such other measures as may become apparent;

157.40    Failing or refusing properly to report all of the above events in the Pennsylvania Department of Education required Safe Schools – School Report, or to the United States Department of Education via the Civil Rights Data Collection program.

157.41    Such other ways as may become apparent.

158.    Defendant Keen, by his above actions and inactions, ignored and/or violated Defendant JSASD's and Defendant Board's enacted Policies and Procedures regarding racial discrimination, harassment, and retaliation, and bullying, and otherwise violated Plaintiffs', NW's and KW's rights under the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983, and Title VI, by, inter alia:

158.1    Failing or refusing properly to supervise or provide appropriate training to Defendant Seagraves, and other JSASD personnel, regarding the JSASD and Board Policies and Procedures, and appropriate responses to reports of racial discrimination, harassment and retaliation, and bullying;

40

158.2   Failing or refusing properly to document Plaintiffs' and NW's reports of racial discrimination, harassment and retaliation, and bullying;

158.3   Failing or refusing properly to notify, involve, and coordinate in conjunction with the Title IX Coordinator;

158.4   Failing or refusing properly to have the Title IX Coordinator contact Plaintiffs or NW about the reports and gather further information;

158.5   Failing or refusing properly to discuss with Plaintiffs or NW the availability of supportive measures;

158.6   Failing or refusing properly to ensure that adequate nondiscrimination procedures were in place;

158.7   Failing or refusing properly to recommend or put into place new procedures or modifications regarding racial discrimination, harassment and retaliation, and bullying, and monitor the implementation of the same;

158.8   Failing or refusing properly to train and/or retrain students and employees;

158.9    Failing or refusing properly to monitor and provide technical assistance to individuals involved in managing informal reports and formal complaints;

158.10    Failing or refusing properly to follow prompt timeframes for investigating and documenting and reporting Plaintiffs' or NW's reports of racial discrimination, harassment and retaliation, and bullying;

158.11    Failing or refusing properly to provide Plaintiffs or NW with written notice of any delays and the reason(s) for the same, nor documenting the same;

158.12    Failing or refusing properly to inform Plaintiffs or NW about the Board's policies on discrimination;

158.13    Failing or refusing properly to promptly implement appropriate measures to protect Plaintiffs or NW or others, from policy violations during any investigations;

158.14    Failing or refusing properly to provide Plaintiffs or NW with timely information concerning the factual information on the complaint and the investigative process;

158.15    Failing or refusing properly to inform Plaintiffs or NW of their right to file criminal charges;

158.16  Failing or refusing properly to provide Plaintiffs, NW or KW with information on resources available, such as making a report to the police and available assistance including counseling resources;

158.17  Failing or refusing properly to keep Superintendent Ulmer aware of the progress of any investigations or recommended dispositions and corrective actions;

158.18  Failing or refusing properly to document any informal "resolutions" and having Plaintiffs or NW sign the same;

158.19  Failing or refusing properly to contact Plaintiffs or NW to determine if any such resolution was effective, and monitor any such remedies;

158.20  Failing or refusing properly to conduct adequate and reliable investigations;

158.21  Failing or refusing properly to inform law enforcement about violations of criminal law;

158.22  Failing or refusing properly to inform Plaintiffs or NW of the anticipated dates for completion of investigative reports, and any changes to the anticipated due dates;

158.23   Failing or refusing properly to create proper and timely written reports of the investigations;

158.24   Failing or refusing properly to consider the record as a whole or the totality of the circumstances;

158.25   Failing or refusing properly to inform Plaintiffs or NW of the outcome of investigations or recommended dispositions within a reasonable time or, in some cases, at all;

158.26   Failing or refusing properly to take prompt, corrective action designed to ensure that such conduct ceased and that no retaliation occurred….[and] promptly taking appropriate steps to prevent the recurrence of the prohibited conduct and to address the discriminatory effect the prohibited conduct had on Plaintiffs, NW and KW and the district education program or activity;

158.27   Failing or refusing properly to inform Plaintiffs or NW of the corrective actions taken;

158.28   Failing or refusing properly to follow up by assessing the effectiveness of the corrective actions;

158.29   Failing or refusing properly to inform Plaintiffs or NW of any appeal procedure;

158.30    To the extent Defendant Keen considered that Plaintiffs or NW may have appealed any findings or corrective actions, failing or refusing properly to ensure preparing a written response to the appeal within certain timeframes and providing a copy of the response to Plaintiffs or NW;

158.31    Failing or refusing properly to allow Plaintiffs or NW to view any videos or screenshots so that they may assist in determining what had occurred in the hallway and cafeteria events;

158.32    Failing or refusing properly to create an "ethics" or similar commission;

158.33    Failing or refusing properly and accurately to inform Plaintiffs, NW and KW of his awareness of certain events;

158.34    Failing or refusing properly and accurately to inform Plaintiffs or NW whether the students involved in the hallway event had been identified;

158.35    In spite of the JSASD and Board Policies and Procedures, telling Plaintiff Adam Williams that "NW needs to just worry about himself," thereby discouraging Plaintiffs, NW and KW from reporting incidents of racial discrimination, harassment and retaliation of others;

158.36   In spite of the JSASD and Board Policies and Procedures, telling Plaintiffs that Defendants could not request that someone else's child be moved, and did not have the right to change another student's schedule;

158.37   Stating that the carving on NW's cafeteria table could have occurred as long ago as the previous year;

158.38   Providing conflicting information on when the cafeteria tables may be moved;

158.39   Failing and refusing properly to take timely, appropriate and reasonable action to investigate or otherwise determine what had occurred, and remedy the situation;

158.40   Responding in a clearly unreasonable manner to address the racial discrimination, harassment and retaliation, and bullying;

158.41   Having actual knowledge that the efforts, and lack of efforts, to attempt to mediate the racial discrimination, harassment and retaliation, and bullying, were inadequate and ineffective, but continuing to engage in those same methods, or failures to act, to no avail;

158.42   Knowing that what had or had not been done in response had not sufficed, and failing or refusing properly to try or recommend other reasonable alternatives such as, <u>inter alia</u>:

158.42.1   additional training or retraining of students and staff;

158.42.2   communicating with the "Jersey Shore Community" as had been done regarding the basketball game incident;

158.42.3   conducting presentations and/or assemblies for staff and/or the student body;

158.42.4   creating an "ethics" or similar commission;

158.42.5   disseminating educational materials to the staff and/or student body;

158.42.6   enlisting the aid and advice of, and presentations by, any entities who specialize in racial discrimination, harassment and retaliation, and bullying, in schools;

158.42.7   providing information, education or guidance to the public through meetings and announcements;

158.42.8   taking stricter disciplinary or corrective actions;

158.42.9   facilitating and overseeing interaction between Plaintiffs and NW, and those whom they reported and their parents, regarding what had occurred;

158.42.10  providing further information to Plaintiffs or NW so that a productive meeting with Defendants may occur;

158.42.11  offering or having a meeting with Plaintiffs or NW after providing what information could be provided;

158.42.12  involving law enforcement;

158.42.13  having an independent review conducted of what had occurred and the actions taken;

158.42.14  reinforcing the staff and students' strict adherence to the Policies and Procedures;

158.42.15  amending Policies and Procedures;

158.42.16  such other measures as may become apparent;

158.43  Failing or refusing properly to ensure proper reporting of all of the above events in the Pennsylvania Department of Education required Safe Schools – School Report, or to the United States Department of Education via the Civil Rights Data Collection program;

158.44  Such other ways as may become apparent.

159.  Defendant Seagraves, by her above actions and inactions, and to the extent she had been delegated any investigatory, reporting, and disposition/corrective action responsibilities, ignored and/or violated Defendant

JSASD's and Defendant Board's enacted Policies and Procedures regarding racial discrimination, harassment, and retaliation, and bullying, and otherwise violated Plaintiffs', NW's and KW's rights under the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983, and Title VI, by, inter alia:

159.1   Failing or refusing properly to supervise or provide appropriate training to JSASD personnel, regarding the JSASD and Board Policies and Procedures, and appropriate responses to reports of racial discrimination, harassment and retaliation, and bullying;

159.2   Failing or refusing properly to document Plaintiffs' and NW's reports of racial discrimination, harassment and retaliation, and bullying;

159.3   Failing or refusing properly to notify, involve, and coordinate in conjunction with the Title IX Coordinator;

159.4   Failing or refusing properly to have the Title IX Coordinator contact Plaintiffs or NW about the reports and gather further information;

159.5   Failing or refusing properly to discuss with Plaintiffs or NW the availability of supportive measures;

159.6    Failing or refusing properly to ensure that adequate nondiscrimination procedures were in place;

159.7    Failing or refusing properly to recommend or put into place new procedures or modifications regarding racial discrimination, harassment and retaliation, and bullying, and monitor the implementation of the same;

159.8    Failing or refusing properly to train and/or retrain students and employees;

159.9    Failing or refusing properly to monitor and provide technical assistance to individuals involved in managing informal reports and formal complaints;

159.10    Failing or refusing properly to follow prompt timeframes for investigating and documenting and reporting Plaintiffs' and NW's reports of racial discrimination, harassment and retaliation, and bullying;

159.11    Failing or refusing properly to provide Plaintiffs or NW with written notice of any delays and the reason(s) for the same, nor documenting the same;

159.12    Failing or refusing properly to inform Plaintiffs or NW about the Board's policies on discrimination;

159.13  Failing or refusing properly to promptly implement appropriate measures to protect Plaintiffs, NW, or others, from policy violations during any investigations;

159.14  Failing or refusing properly to provide Plaintiffs or NW with timely information concerning the factual information on the complaint and the investigative process;

159.15  Failing or refusing properly to inform Plaintiffs or NW of their right to file criminal charges;

159.16  Failing or refusing properly to provide Plaintiffs or NW with information on resources available, such as making a report to the police and available assistance including counseling resources;

159.17  Failing or refusing properly to keep Superintendent Ulmer, and/or Defendant Keen, aware of the progress of any investigations or recommended dispositions and corrective actions;

159.18  Failing or refusing properly to document any informal "resolutions" and having Plaintiffs or NW sign the same;

159.19 Failing or refusing properly to contact Plaintiffs or NW to determine if any such resolution was effective, and monitor any such remedies;

159.20 Failing or refusing properly to conduct adequate and reliable investigations;

159.21 Failing or refusing properly to inform law enforcement about violations of criminal law;

159.22 Failing or refusing properly to inform Plaintiffs or NW of the anticipated dates for completion of investigative reports, and any changes to the anticipated due dates;

159.23 Failing or refusing properly to create proper and timely written reports of the investigations;

159.24 Failing or refusing properly to consider the record as a whole or the totality of the circumstances;

159.25 Failing or refusing properly to inform Plaintiffs or NW of the outcome of investigations or recommended dispositions within a reasonable time or, in some cases, at all;

159.26 Failing or refusing properly to take prompt, corrective action designed to ensure that such conduct ceased and that no retaliation occurred….[and] promptly taking appropriate steps to

prevent the recurrence of the prohibited conduct and to address the discriminatory effect the prohibited conduct had on Plaintiffs, NW and the district education program or activity;

159.27   Failing or refusing properly to inform Plaintiffs or NW of the corrective actions taken;

159.28   Failing or refusing properly to follow up by assessing the effectiveness of the corrective actions;

159.29   Failing or refusing properly to inform Plaintiffs or NW of any appeal procedure;

159.30   To the extent Defendant Seagraves considered that Plaintiffs or NW may have appealed any findings or corrective actions, failing or refusing properly to ensure preparing a written response to the appeal within certain timeframes and providing a copy of the response to Plaintiffs or NW;

159.31   Failing or refusing properly to allow Plaintiffs or NW to view any videos or screenshots so that they may assist in determining what had occurred in the hallway and cafeteria incidents;

159.32   Failing or refusing properly to create an "ethics" or similar commission;

159.33  Stating to Plaintiffs that there was not anything else Defendants could do;

159.34  Failing or refusing properly and accurately to inform Plaintiffs or NW whether the students involved in the hallway event had been identified;

159.35  Failing or refusing properly to take timely, appropriate and reasonable action to investigate or otherwise determine what had occurred, and remedy the situation;

159.36  Responding in a clearly unreasonable manner to address the racial discrimination, harassment and retaliation, and bullying;

159.37  Having actual knowledge that the efforts, and lack of efforts, to attempt to mediate the racial discrimination, harassment and retaliation, and bullying, were inadequate and ineffective, but continuing to engage in those same methods, or failures to act, to no avail;

159.38  Knowing that what had or had not been done in response had not sufficed, and failing or refusing properly to try or recommend other reasonable alternatives such as, inter alia:

  159.38.1    additional training or retraining of students and staff;

159.38.2    communicating with the "Jersey Shore Community" as had been done regarding the basketball game incident;

159.38.3    conducting presentations and/or assemblies for staff and/or the student body;

159.38.4    disseminating educational materials to the staff and/or student body;

159.38.5    enlisting the aid and advice of, and presentations by, any entities who specialize in racial discrimination, harassment and retaliation, and bullying, in schools;

159.38.6    providing information, education or guidance to the public through meetings and announcements;

159.38.7    taking stricter disciplinary or corrective actions;

159.38.8    facilitating and overseeing interaction between Plaintiffs, NW, and those whom they reported and their parents, regarding what had occurred;

159.38.9    involving law enforcement;

159.38.10    recommending an independent review be conducted of what had occurred and the actions taken;

159.38.11    reinforcing the staff and students' strict adherence to the Policies and Procedures;

159.38.12  amending Policies and Procedures;

159.38.13  creating an "ethics" or similar commission;

159.38.14  such other measures as may become apparent;

159.39  Failing or refusing properly to ensure proper reporting of all of the above events in the Pennsylvania Department of Education required Safe Schools – School Report, or to the United States Department of Education via the Civil Rights Data Collection program;

159.40  Such other ways as may become apparent.

160.  In light of Defendant Ulmer's statement to Plaintiffs that he had brought their concerns to Defendant Board and was trying to educate them, and the presumed existence, under the JSASD and Board Policies, of documentation regarding what had been reported, investigations, dispositions and corrective actions, Defendant Board had the obligation and ability to review all that had happened, and/or request further information on the same.

161.  Defendant Board, by its above actions and inactions, ignored and/or violated Defendant JSASD's and Defendant Board's enacted Policies and Procedures regarding racial discrimination, harassment, and retaliation, and bullying, and otherwise violated Plaintiffs', NW's and KW's rights under the Equal

Protection Clause and Due Process Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983, and Title VI, by, <u>inter alia</u>:

161.1    Failing or refusing properly to request and review documentation or information concerning what Plaintiffs, NW and KW had reported, and the investigations, dispositions and corrective actions taken;

161.2    Failing or refusing properly to supervise or provide appropriate training to Defendants Ulmer, Keen and Seagraves, and other JSASD personnel, regarding the JSASD and Board Policies and Procedures, and appropriate responses to reports of racial discrimination, harassment and retaliation, and bullying;

161.3    Failing or refusing properly to ensure proper documentation of Plaintiffs', NW's or KW's reports of racial discrimination, harassment and retaliation, and bullying;

161.4    Failing or refusing properly to ensure that the Title IX Coordinator was notified and involved;

161.5    Failing or refusing properly to ensure that the Title IX Coordinator contact Plaintiffs or NW about the reports and gather further information;

161.6    Failing or refusing properly to ensure discussions with Plaintiffs or NW about the availability of supportive measures;

161.7    Failing or refusing properly to ensure that adequate nondiscrimination procedures were in place;

161.8    Failing or refusing properly to ensure new procedures or modifications regarding racial discrimination, harassment and retaliation, and bullying, and monitor the implementation of the same;

161.9    Failing or refusing properly to ensure proper training and/or retraining of students and employees;

161.10   Failing or refusing properly to ensure the monitoring and providing technical assistance to individuals involved in managing informal reports and formal complaints;

161.11   Failing or refusing properly to ensure prompt timeframes for investigating and documenting and reporting Plaintiffs' and NW's reports of racial discrimination, harassment and retaliation, and bullying;

161.12   Failing or refusing properly to ensure providing Plaintiffs or NW with written notice of any delays and the reason(s) for the same, nor documenting the same;

161.13   Failing or refusing properly to ensure informing Plaintiffs or NW about the Board's policies on discrimination;

161.14   Failing or refusing properly to ensure promptly implementing appropriate measures to protect Plaintiffs, NW, or others, from policy violations during any investigations;

161.15   Failing or refusing properly to ensure providing Plaintiffs or NW with timely information concerning the factual information on the complaints and the investigative process;

161.16   Failing or refusing properly to ensure informing Plaintiffs or NW of their right to file criminal charges;

161.17   Failing or refusing properly to ensure providing Plaintiffs or NW with information on resources available, such as making a report to the police and available assistance including counseling resources;

161.18   Failing or refusing properly to ensure properly documenting any informal "resolutions" and having Plaintiffs, NW or KW sign the same;

161.19   Failing or refusing properly to ensure contacting Plaintiffs, NW or KW to determine if any such resolution was effective, and monitor any such remedies;

161.20   Failing or refusing properly to ensure conducting adequate and reliable investigations;

161.21   Failing or refusing properly to ensure informing law enforcement about violations of criminal law;

161.22   Failing or refusing properly to ensure informing Plaintiffs or NW of the anticipated dates for completion of investigative reports, and any changes to the anticipated due dates;

161.23   Failing or refusing properly to ensure creating proper and timely written reports of the investigations;

161.24   Failing or refusing properly to ensure considering the record as a whole or the totality of the circumstances;

161.25   Failing or refusing properly to ensure informing Plaintiffs or NW of the outcome of investigations or recommended dispositions within a reasonable time or, in some cases, at all;

161.26   Failing or refusing properly to ensure taking prompt, corrective action designed to ensure that such conduct ceased and that no retaliation occurred….[and] promptly taking appropriate steps to prevent the recurrence of the prohibited conduct and to address the discriminatory effect the prohibited conduct had on Plaintiffs, NW or KW and the district education program or activity;

161.27   Failing or refusing properly to create an "ethics" or similar commission;

161.28   Failing or refusing properly to ensure informing Plaintiffs or NW of the corrective actions taken;

161.29   Failing or refusing properly to ensure following up by assessing the effectiveness of the corrective actions;

161.30   Failing or refusing properly to ensure informing Plaintiffs or NW of any appeal procedure;

161.31   To the extent that Plaintiffs or NW may have appealed any findings or corrective actions, failing or refusing properly to ensure preparing a written response to the appeal within certain timeframes and providing a copy of the response to Plaintiffs or NW;

161.32   Failing or refusing properly to ensure allowing Plaintiffs or NW to view any videos or screenshots so that they may assist in determining what had occurred in the hallway and cafeteria incidents;

161.33   Failing and refusing properly to ensure that timely, appropriate and reasonable action would be taken to investigate or otherwise determine what had occurred, and remedy the situation;

161.34   Failing and refusing properly to request and obtain additional information and guidance from Defendants Ulmer, Keen and Seagraves, or anyone else, regarding what had occurred, steps that were taken, and steps that could be taken;

161.35   Responding in a clearly unreasonable manner to address the racial discrimination, harassment and retaliation, and bullying;

161.36   Having actual knowledge that the efforts, and lack of efforts, to attempt to mediate the racial discrimination, harassment and retaliation, and bullying, were inadequate and ineffective, but continuing to engage in those same methods, or failures to act, to no avail;

161.37   Knowing that what had or had not been done in response had not sufficed, and failing or refusing properly to try or recommend other reasonable alternatives such as, inter alia:

    161.37.1   additional training or retraining of students and staff;

    161.37.2   communicating with the "Jersey Shore Community" as had been done regarding the basketball game incident;

    161.37.3   conducting presentations and/or assemblies for staff and/or the student body;

    161.37.4   creating an "ethics" or similar commission;

161.37.5    disseminating educational materials to the staff and/or student body;

161.37.6    enlisting the aid and advice of, and presentations by, any entities who specialize in racial discrimination, harassment and retaliation in schools;

161.37.7    providing information, education or guidance to the public through Board meetings and announcements;

161.37.8    taking stricter disciplinary or corrective actions;

161.37.9    facilitating and overseeing interaction between Plaintiffs, NW, and those whom they reported and their parents, regarding what had occurred;

161.37.10   providing further information to Plaintiffs, NW and KW so that a productive meeting with Defendants may occur;

161.37.11   offering or having a meeting with Plaintiffs, NW and KW after providing what information could be provided;

161.37.12   offering Plaintiffs, NW and KW an opportunity to address Defendant Board;

161.37.13   involving law enforcement;

161.37.14   having an independent review conducted of what had occurred and the actions taken;

161.37.15   reinforcing the staff and students' strict adherence to the Policies and Procedures;

161.37.16   amending Policies and Procedures;

161.37.17   such other measures as may become apparent;

161.38   Failing or refusing properly to ensure proper reporting of all of the above events in the Pennsylvania Department of Education required Safe Schools – School Report, or to the United States Department of Education via the Civil Rights Data Collection program;

161.39   Such other ways as may become apparent.

162.   By their actions and inactions, and in violation of their own enacted Policies and Procedures, Defendants engaged in, furthered, facilitated, and promoted the racial discrimination, harassment and retaliation, and bullying.

163.   Defendants' actions and inactions caused Plaintiffs, NW and KW, to undergo the continued racial discrimination, harassment and retaliation, and bullying, and/or made them liable or vulnerable to it.

164. Defendants acted with intent, and/or engaged in the unlawful practices maliciously, willfully, in bad faith, and/or with reckless disregard and deliberate indifference to Plaintiffs', NW's and KW's rights.

165. Defendants' actions and failures and refusals to act deprived Plaintiffs, NW and KW of access to the educational opportunities or benefits available at Defendant JSASD.

166. Due to the racial discrimination, harassment and retaliation, and bullying, and in fear for his safety given the same, Plaintiffs requested that NW be excused from attending school on certain days, and ultimately had NW transferred to another school district, and relocated themselves.

167. As a result of the above, Plaintiff Adam Williams requested, and was granted, a transfer to be a military recruiter at the new location to which Plaintiffs were moving, which also resulted in a reduction in pay.

168. As a result of the above, Plaintiff Catiese Williams had to resign her employment to move to the new location.

169. As a result of the above, Plaintiffs have incurred expenses and losses in relocating.

170. As a result of Defendants' conduct, Plaintiffs, NW and KW have suffered loss of educational benefits and opportunities, humiliation, emotional distress, lost wages and benefits, lost future wages and benefits, expenses of

relocation, medical bills, attorneys' fees and costs, and such other damages as may become apparent.

## COUNT I

171.    Paragraphs 1 through 170 are incorporated herein by reference as though fully set forth.

172.    Pursuant to the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution: "No state shall…deny to any person within its jurisdiction equal protection of the laws." U.S. Const. amend. XIV, Section 1.

173.    Pursuant to 42 U.S.C. §1983: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State…subjects, or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be libel to the party injured in an action at law, suit and equity, or other proper proceeding for redress." 42 U.S.C. §1983.

174.    Through their actions and inactions, and failures or refusals to act, as described in detail, above, Defendants violated Plaintiffs', NW's and KW's rights to equal protection under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983.

175.    Plaintiffs, NW and KW seek all rights and remedies to which they are entitled pursuant to the Equal Protection Clause of the Fourteenth Amendment to the

United States Constitution and 42 U.S.C. §1983, including but not limited to, compensatory and punitive damages, declaratory and injunctive relief, and attorneys' fees and costs.

WHEREFORE, Plaintiffs respectfully request This Honorable Court enter judgment in their favor, and award them damages for loss of educational benefits and opportunities, humiliation, emotional distress, lost wages and benefits, lost future wages and benefits, expenses and losses of relocation, medical bills, attorneys' fees and costs, other compensatory damages, punitive damages, declaratory and injunctive relief, and such other relief as is appropriate. Plaintiffs demand a jury trial.

## COUNT II

176.   Paragraphs 1 through 175 are incorporated herein by reference as though fully set forth.

177.   Pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution: "No state shall…deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, Section 1.

178.   Pursuant to 42 U.S.C. §1983: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State…subjects, or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be libel to the party injured in an action at law, suit and equity, or other proper proceeding for redress." 42 U.S.C. §1983.

179. Concerning their reports of racial discrimination, harassment and retaliation, and bullying, Plaintiffs, NW and KW were entitled to the processes and procedures by Defendants as set forth in the JSASD and Board Policies and Procedures described in more detail, above.

180. Through their actions and inactions, and failures or refusals to act and follow those Policies and Procedures, Defendants denied and violated Plaintiffs', NW's and KW's rights to due process under the Fourteenth Amendment of the United Constitution and 42 U.S.C. §1983.

181. Plaintiffs, NW and KW seek all rights and remedies to which they are entitled pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983, including but not limited to, compensatory and punitive damages, declaratory and injunctive relief, and attorneys' fees and costs.

WHEREFORE, Plaintiffs respectfully request This Honorable Court enter judgment in their favor, and award them damages for loss of educational benefits and opportunities, humiliation, emotional distress, lost wages and benefits, lost future wages and benefits, expenses and losses of relocation, medical bills, attorneys' fees and costs, other compensatory damages, punitive damages,

declaratory and injunctive relief, and such other relief as is appropriate. Plaintiffs demand a jury trial.

## COUNT III

182. Paragraphs 1 through 181 are incorporated herein by reference as though fully set forth.

183. Pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§2000d, et seq.: "No person in the United States shall, on the ground of race...be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

184. Through their actions and inactions, and failures or refusals to act, as described in detail, above, Defendants violated Plaintiffs', NW's and KW's rights under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§2000d, et seq.

185. Plaintiffs, NW and KW seek all rights and remedies to which they are entitled pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§2000d et seq., including but not limited to, compensatory and punitive damages, declaratory and injunctive relief, and attorneys' fees and costs.

WHEREFORE, Plaintiffs respectfully request This Honorable Court enter judgment in their favor, and award them damages for loss of educational benefits and opportunities, humiliation, emotional distress, lost wages and benefits, lost future wages and benefits, expenses and losses of relocation, medical bills,

attorneys' fees and costs, other compensatory damages, punitive damages, declaratory and injunctive relief, and such other relief as is appropriate. Plaintiffs demand a jury trial.

Respectfully submitted:

RIEDERS, TRAVIS, DOHRMANN,
MOWREY, HUMPHREY & WATERS

_/s/Jeffrey C. Dohrmann, Esquire
Jeffrey C. Dohrmann, Esquire
Attorney for Plaintiffs
PA ID #68870
161 West Third Street
Williamsport, PA 17701
(570) 323-8711 (telephone)
(570) 323-4192 (fax)
jdohrmann@riederstravis.com