## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADAM WILLIAMS and CATIESE WILLIAMS, individually and as parents and natural guardians of NW and KW, their minor children, | No. 4:22-CV-00473 |
| | (Chief Judge Brann) |
| Plaintiffs, | |
| v. | |
| JERSEY SHORE AREA SCHOOL DISTRICT; BRIAN T. ULMER; STEVEN KEEN; and ELIZABETH SEAGRAVES, | |
| Defendants. | |

### MEMORANDUM OPINION

### MAY 17, 2023

Cruelty among schoolchildren is undoubtedly disturbing. If my colleagues and I had the power and ability to eradicate it from society, we would not hesitate to do so—but we do not. Facts like those alleged in this Amended Complaint are particularly difficult to read: black students in public school repeatedly called the n-word and subject to racially-motivated taunting by their peers. Were it the Court's job to consider this issue from a sociological perspective, I would wonder how the parents of the harassing children are allowing their children to behave in this manner, whether they care, or whether they are condoning and encouraging it.

But such considerations are not within the purview of the Court; my responsibility lies only in determining whether the allegations in the Amended Complaint sufficiently state claims upon which relief can be granted against the School District and certain actors in its employ. They do not.

While the Court regrets what the minor Plaintiffs have allegedly gone through and appreciates how difficult the situation must be from the parents' perspective, the law imposes a very high standard to causes of actions against public schools and school officials for the consequences of student bullying, racially motivated or otherwise. The Amended Complaint's allegations do not meet that standard. Accordingly, Defendants' Motion to Dismiss is granted.

## I.      BACKGROUND

### A.      Factual Background[1]

Plaintiffs Adam and Catiese Williams are the adult parents of NW and KW (the "Minor Students"), both minors and students in the Jersey Shore Area School District (the "School District").[2] NW and KW are biracial; their father is white and their mother is black.[3] The Amended Complaint describes a number of events that NW and KW experienced while enrolled in the School District. For the sake of

---

[1]   As discussed below, for purposes of this motion, the Court accepts as true all allegations contained in the amended complaint. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020) (in evaluating motion to dismiss court "must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief" (internal quotation marks omitted)).

[2]   Doc. 20 ¶¶ 1, 6.

[3]   *Id*. ¶ 11 .

brevity, the Court will summarize and describe the salient features of each incident in the below chart.

| Date | Summary | Relevant Actions Taken and Outcome |
|---|---|---|
| Fall 2019[4] | Students told NW they wanted to sell him on the slave stage, they wished they could travel back in time so that they could own him as a slave and whip him, that he only eats watermelon and drinks Kool-Aid, referred to him as a "monkey," and told him he was only good at sports and a fast runner because he is black. | Plaintiffs and NW reported the incidents to school administrators (unnamed in the Amended Complaint). Meetings were held with NW and the harassing students; Plaintiffs were never contacted. |
| Fall 2020[5] | Students told NW (a member of the Middle School Football Team) that he was only good at sports because he was black. | Plaintiffs reported to the School District's Athletic Director, who investigated and told Plaintiffs "nothing was founded." NW switched from the freshman to varsity football team. |
| March 2021[6] | A fellow student called KW the n-word. | KW reported the incident to the Middle School Principal and Assistant Principal. Plaintiffs and KW met with school administrators and the harassing student and his/her mother. The student apologized to KW. Administrators asked KW to be part of an ethics committee that never materialized. KW later transferred schools. |

---

[4]   *Id.* ¶¶ 29-34.
[5]   *Id.* ¶¶ 35-41.
[6]   *Id.* ¶¶ 42-55.

| Date | Summary | Relevant Actions Taken and Outcome |
|------|---------|-----------------------------------|
| Sept. and Oct. 2021[7] | Students called NW the n-word, made comments about hanging NW, and made other racist remarks. | Plaintiffs reported the incidents to Seagraves, who discussed them with Ulmer and Keen. Seagraves told Plaintiffs they could not identify the offending students and refused to investigate further. |
| Nov. 10, 2021[8] | Students harassed NW during homeroom by making remarks and writing letters on the whiteboard, which alluded to the n-word. | Plaintiffs left a phone message for Ulmer and did not hear back. They then met with Keen and Seagraves to discuss the incidents. Keen asked for some time to investigate the incident. Adam Williams requested for NW to be removed from the homeroom. |
| Nov. 12, 2021[9] | Another student reported harassment by a student who had previously harassed NW. | Keen called Catiese Williams to say he had met with NW and was continuing to look into the incidents. Ulmer then called Catiese Williams and told her that "consequences were issued to certain students." |
| Nov. 18, 2021[10] | Students accused NW of over-exaggerating the racist incidents and getting others in trouble. | Plaintiffs and NW met with Keen and Seagraves, who had NW fill out a discrimination report form. |

---

[7]   *Id*. ¶¶ 56-76.
[8]   *Id*. ¶¶ 77-93.
[9]   *Id*. ¶¶ 94-100.
[10]  *Id*. ¶¶ 101-118.

| Date | Summary | Relevant Actions Taken and Outcome |
|------|---------|-------------------------------------|
| Dec. 13, 2021[11] | NW found the n-word carved in the table where he usually sat for lunch. | NW and Catiese Williams reported the incident to Keene, who investigated the incident by reviewing camera footage and interviewing students. Keen also informed Catiese Williams that he had the n-word removed from the table. |
| Jan. 18, 2022[12] | A student showed NW a photo of a Ku Klux Klan member on the student's phone. | Catiese Williams reported the incident to the School Resource Officer, who told her that none of the prior incidents had been reported to him. The Resource Officer documented the incident and informed Catiese Williams that there was "not enough to press harassment charges" against the student. |

The Amended Complaint also attached and described the School District's written policies and procedures regarding racial discrimination, harassment, retaliation, and bullying.[13] Plaintiffs allege that Defendants' conduct in responding to the above-listed incidents violated those policies and procedures.[14]

---

[11]  *Id.* ¶¶ 119-138.
[12]  *Id.* ¶¶ 139-163.
[13]  *Id.* ¶¶ 15-28, Exs. A through E.
[14]  See, *e.g.*, *id.* ¶ 34.

### B.    Procedural History

Plaintiffs initiated this lawsuit with an original Complaint filed on March 29, 2022.[15] Plaintiffs then filed the operative Amended Complaint on September 1, 2022 against Jersey Shore Area School District, Brian T. Ulmer (the Superintendent of the School District), Steven Keen (the Principal of Jersey Shore High School), and Elizabeth Seagraves (the Assistant Principal of Jersey Shore High School) (Ulmer, Keen, and Seagraves collectively the "Individual Defendants"), and Defendants moved to dismiss the Amended Complaint on October 7, 2022.[16] That Motion has been fully briefed and is ripe for disposition.[17] For the following reasons, the Court will grant Defendants' motion.

## II.    LAW

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following *Bell Atlantic Corp. v. Twombly*[18] and *Ashcroft v. Iqbal*,[19] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[20] In deciding a motion to dismiss, courts within the United States Court of Appeals for the Third Circuit must follow three steps: (1) take note of the elements

---

[15]   Doc. 1.
[16]   Docs. 20, 23.
[17]   Docs. 26, 37, 41.
[18]   550 U.S. 544 (2007).
[19]   556 U.S. 662 (2009).
[20]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) assume the veracity of all well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief.[21]

## III.   ANALYSIS[22]

The Amended Complaint brings the following causes of action: (1) violation of Title VI of the Civil Rights Act of 1964, against the School District; (2) violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, against the Individual Defendants; (3) violation of the Fourteenth Amendment's Procedural Due Process protections, against the Individual Defendants; (4) violation of the Fourteenth Amendment's Substantive Due Process protections, against the School District; and (5) violation of the Fourteenth Amendment's Equal Protection and Procedural Due Process protections, against the School District.[23]

---

[21]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[22]   Defendants argue that Plaintiffs lack standing to bring claims individually, *i.e.*, on behalf of themselves and not on behalf of the Minor Students. And Plaintiffs concede that they do not have individual standing under Title VI. *See* Doc. 37 at p. 48. The Court finds Defendants' arguments persuasive, and Plaintiffs do not meaningfully contend or set forth sufficient arguments that they *do* have standing to bring individual claims. Therefore, all claims brought by Adam and Catiese Williams in their individual capacity are dismissed without prejudice, except for Count I (the Title VI claim), which is dismissed with prejudice. Also, because the Court concludes that the Amended Complaint fails to state a claim against the Individual Defendants, it declines to address in this opinion Defendants' assertion that the Individual Defendants are entitled to qualified immunity.

[23]   Doc. 20 ¶¶ 184-205.

### A.    Title VI Claim

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[24] Accordingly, "Title VI prohibits intentional discrimination based on race in any program that receives federal funding."[25] To state a claim of racial discrimination under Title VI, a plaintiffs must allege (1) "there is racial or national origin discrimination" and (2) "the entity engaging in discrimination is receiving federal financial assistance."[26]

As to the first element, when a claim is based upon the school's "failure to address a racially hostile environment," a plaintiff "may recover for alleged 'severe, pervasive, and objectively offensive' harassment if the school 'acts with deliberate indifference to known acts of harassment.'"[27] Moreover, "[t]he School District can only be held liable for a Title VI claim of racial discrimination when its response is 'clearly unreasonable in light of the known circumstances.'"[28] Stated differently, "a plaintiff must demonstrate 'severe *or* pervasive' harassment based on the student's race, and 'deliberate indifference to known acts of harassment.'"[29]

---

[24]   42 U.S.C. § 2000d.
[25]   *Bridges ex rel. D.B. v. Scranton Sch. Dist.*, 644 F. App'x 172, 179 (3d Cir. 2016).
[26]   *Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 655 (E.D. Pa. 2020).
[27]   *Bridges*, 644 F. App'x at 179 (quoting *Davis v. Monroe Cty. Bd. of Educ.,* 526 U.S. 629, 633 (1999)).
[28]   *Id.* (quoting *Davis,* 526 U.S. at 648).
[29]   *L. L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545, 549 (3d Cir. 2017) (quoting *Castleberry v. STI Group*, 863 F.3d 259, 264 (3d Cir. 2017); *Davis,* 526 U.S. at 633).

Further, "Title VI 'prohibits only intentional discrimination'"[30] and, as such, school districts may only be held liable for instances of harassment "'of which they have actual knowledge.'"[31] To demonstrate knowledge, a plaintiffs must allege that the harassment was reported to an "appropriate person" who "is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination."[32] Therefore, "a school district cannot be held liable for the acts of its teachers or staff through *respondeat superior* liability."[33] Even a single use of the "n-word" is sufficiently severe to satisfy the required level of harassment necessary to sustain a Title VI claim.[34]

Plaintiffs argue that the School District's "actions and failures and refusals to act" violated the Minor Students' rights under Title VI.[35] In response, the School District contends that the Amended Complaint fails to plead facts demonstrating that the School District's response to the harassment was clearly unreasonable, or that any District decisionmaker responded or failed to respond in a manner that

---

[30]  *Moore*, 471 F. Supp. 3d at 656 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001)).

[31]  *Id.* (quoting *Davis*, 526 U.S. at 650).

[32]  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Although *Gebser* addressed a claim under Title IX rather than Title VI, "the scope of Title VI is defined in terms nearly identical to Title IX . . . [and] Courts have consistently applied the same legal analysis to construe Title VI and Title IX." *Smith v. Nat'l Collegiate Athletic Ass'n*, 266 F.3d 152, 157-58 (3d Cir. 2001) (internal citation omitted).

[33]  *Moore*, 471 F. Supp. 3d at 656.

[34]  *L. L.*, 710 F. App'x at 549 (citing *Castleberry*, 863 F.3d at 264).

[35]  Doc. 20 ¶ 186.

knowingly caused the Minor Students to undergo further harassment.[36] The Court agrees with the School District.

The Amended Complaint sufficiently alleges that the Minor Students suffered pervasive harassment, and that the School District had actual knowledge of the harassment. Therefore, the relevant inquiry is whether the School District's response violated Title VI, and the response only violated Title VI if it was clearly unreasonable, or if decisionmakers in the School District responded or failed to respond in a manner that knowingly caused the Minor Students to undergo further harassment. The Court finds that the School District's response was not clearly unreasonable.

The School District's collective response to the various ongoing harassment incidents included meetings with Plaintiffs and the Minor Students, investigations of the incidents and the offending students, disciplinary action, documentation of incidents, and review of camera footage. While it is regrettable that this response was apparently not sufficient to stop the bullying, there are no allegations in the Amended Complaint indicating that the School District's response was undertaken with the knowledge that harassment would continue. The response may have been inadequate to stop the bullying and it may have been disorganized, but the allegations do not give rise to deliberate indifference under Title VI. Accordingly, the School District's Motion to Dismiss Count I is granted.

---

[36]   Doc. 23 at p. 19.

### B.    Equal Protection Claims

Counts II and V bring equal protection claims against the Individual Defendants and the School District, respectively. The Court will first analyze the claim against the Individual Defendants, followed by the claim against the School District.

### 1.    Individual Defendants

In Count II of the Amended Complaint, Plaintiffs argue that the Individual Defendants violated the Minor Students' rights under the Equal Protection Clause by their "actions, failures and refusals" demonstrated during the alleged incidents.[37] The Individual Defendants argue that Plaintiffs fail to sufficiently plead facts giving rise to the conduct required for a viable claim under 42 U.S.C. § 1983.[38] The Court agrees with the Individual Defendants.

Under 42 U.S.C. § 1983, individuals may bring a cause of action for damages related to the infringement of their rights under the United States Constitution.[39] In order to state a viable Section 1983 claim, "a plaintiff must establish an underlying constitutional violation."[40] One district court has recently recognized that "the Third Circuit has not addressed whether the [F]ourteenth

---

[37]   Doc. 20 ¶ 191.
[38]   Doc. 26 at pp. 31-37.
[39]   *See* 42 U.S.C. § 1983.
[40]   *Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (citing *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002)).

[A]mendment's [E]qual [P]rotection [C]lause protects students from a school's deliberate indifference to student-on-student harassment."[41]

Absent clear guidance from the Third Circuit, the Court joins at least two other district courts[42] within this Circuit in finding persuasive the reasoning of the United States Court of Appeals for the Second Circuit, which has determined that "schoolteachers, administrators, and boards of education can be held liable for race discrimination" under the Equal Protection Clause if the plaintiff demonstrates "deliberate indifference on the part of the defendants themselves."[43] Specifically:

> to succeed on a § 1983 equal protection claim of deliberate indifference to student-on-student racial harassment, well established law requires a plaintiff to prove (1) that the child in question was in fact harassed by other students based on his race; (2) that such race-based harassment was actually known to the defendant school official; and (3) that the defendant's response to such harassment was so clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that the defendant himself intended for the harassment to occur.[44]

The Amended Complaint's allegations satisfy the first prong. NW and KW were both harassed due to their race, as the factual allegations sufficiently demonstrate and the Court has summarized above. Further, at least five of alleged

---

[41] *Dickerson v. Wallkill Valley Reg'l High Sch. Bd. of Educ.*, No. 19-cv-08450, 2020 U.S. Dist. LEXIS 95584, at *10 (D.N.J. June 1, 2020).

[42] *See id.*; *George v. Bd. of Educ. of the Twp. of Millburn*, 34 F. Supp. 3d 442, 460-61 (D.N.J. 2014).

[43] *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 140 (2d Cir. 1999).

[44] *DiStiso v. Cook*, 691 F.3d 226, 241 (2d Cir. 2012) (internal citations and quotation marks omitted).

Case 4:22-cv-00473-MWB   Document 43   Filed 05/17/23   Page 13 of 26


incidents regarding NW sufficiently plead facts satisfying the second prong.[45] The incidents alleged involving NW do not name any of the Individual Defendants and therefore do not demonstrate that Keen, Seagraves, or Ulmer had actual knowledge of the harassment.[46]

But the allegations involving both Minor Students fail to satisfy the third prong, which requires the defendant's response to the harassment to be "so clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that the defendant himself intended for the harassment to occur."[47] While, under different circumstances, there may exist a valid cause of action against school officials under the Equal Protection Clause for failing to prevent student-on-student racial harassment, Plaintiffs have failed to adequately plead such a cause of action here.

The allegations involving incidents where the Individual Defendants are named state that, collectively, Keen, Ulmer, and Seagraves discussed the incidents with Plaintiffs on the phone, held meetings with Plaintiffs and the Minor Students, investigated the incidents, held offending students accountable, and removed the n-word from the cafeteria table. While the Court regrets that the Individual Defendants' alleged responses to the harassment were not enough to stop it from continuing, the actions taken by the Individual Defendants do not give rise to an

---

[45] *See* incidents alleged to have taken place in September and October 2021, on November 10, 2021, November 12, 2021, November 18, 2021, and December 13, 2021
[46] *See* Doc. 20 ¶¶ 29-34.
[47] *DiStiso*, 691 F.3d at 241 (2d Cir. 2012).

inference that they intended for the harassment to occur. Accordingly, the Individual Defendants' Motion to Dismiss Count II is granted.

### 2.    School District

In Count V of the Amended Complaint, Plaintiffs argue that the School District violated the Minor Students' rights under the Equal Protection Clause by their "actions, failures and refusals" demonstrated during the alleged incidents, and by maintaining a "pattern, practice, policy and custom" of "deliberate indifference: to recognizing, investigating, and remedying racial discrimination."[48] The School District argues that Plaintiffs fail to sufficiently plead facts demonstrating a policy or custom under 42 U.S.C. § 1983 and the standard set forth in *Monell v. The New York City Department of Social Services* and its progeny.[49] The Court agrees with the School District.

It is established that when a municipal organization is named in a Section 1983 suit, that organization may only be held "liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom."[50] "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy,

---

[48]    Doc. 20 ¶¶ 203-205.
[49]    436 U.S. 658 (1978); Doc. 26 at pp. 19-29.
[50]    *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013) (internal citation omitted).

or edict."[51] "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."[52] The United States Court of Appeals for the Third Circuit has explained that "[t]o satisfy the pleading standard, [plaintiffs] must identify a custom or policy, and specify what exactly that custom or policy was."[53]

> An individual's conduct implements official policy or practice under several types of circumstances, including when (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.[54]

"Although a policy or custom is necessary to plead a municipal claim, it is not sufficient to survive a motion to dismiss. A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries."[55] "He may do so by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges."[56] Plaintiffs may demonstrate an affirmative link by alleging that the municipal organization "had knowledge of similar

---

[51] *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (brackets and internal quotation marks omitted).

[52] *Id.* (internal quotation marks omitted).

[53] *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

[54] *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006).

[55] *Roman*, 914 F.3d at 798.

[56] *Id.*

unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiff's] injury."[57] A plaintiff "does not need to identify a responsible decisionmaker in [their] pleadings . . . [n]or [are they] required to prove that the custom had the [organization's] formal approval."[58]

"The pleading requirements are different for failure-to-train claims because a plaintiff need not allege an unconstitutional policy."[59] "Instead, [a plaintiff] must demonstrate that [an organization's] failure to train its employees reflects a deliberate or conscious choice."[60] "A plaintiff sufficiently pleads deliberate indifference by showing that (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."[61]

Here, there are no allegations that the School District implemented a formal policy promoting racial harassment and, therefore, the District may only be liable if its decisionmakers implemented a custom or failed to adequately train its employees to address racial discrimination in a manner that led to the Minor Students being deprived of their constitutional rights. Plaintiffs argue that the School District failed to follow its own policies and procedures, failed to form a

---

[57] *Id.* (brackets, ellipsis, and internal quotation marks omitted).
[58] *Id.* (internal citation and quotation marks omitted).
[59] *Id.*
[60] *Id.* (internal quotation marks omitted).
[61] *Id.* (brackets and internal quotation marks omitted).

diversity committee, and failed to meaningfully investigate the incidents.[62] The School District cites a number of cases to support its argument that public schools do not have a constitutional duty to protect students from private actors such as their peers; therefore, the District alleges that any allegations along that vein regarding the School District's actions or inaction cannot give rise to a constitutional violation under *Monell*.[63] The Court agrees with the School District.

No liability attaches to a Section 1983 claim unless a plaintiff also pleads the violation of a specific constitutional right.[64] And federal courts have made clear that "a policy or custom permitting failures to stop bullying does not cause constitutional violations"[65] and that "a school's failure to respond to reports of bullying cannot give rise to liability under § 1983 because it is not an affirmative act."[66] Therefore, because the Amended Complaint's allegations do not plead a constitutional violation, the Court need not analyze Plaintiffs' *Monell* claims further. Accordingly, the School District's Motion to Dismiss Count V (as it relates to equal protection) is granted.

---

[62]   Doc. 20 ¶¶ 188-192, 203-205.

[63]   Doc. 26 at pp. 22-25.

[64]   *Byrne v. Springfield Sch. Dist.*, No. 21-3199, 2021 U.S. Dist. LEXIS 197915, at *34 (E.D. Pa. Oct. 14, 2021) (internal quotation and citation omitted).

[65]   *Byrne*, 2021 U.S. Dist. LEXIS at *34-35; *Lansberry v. Altoona Area Sch. Dist.*, 356 F. Supp. 3d 486, 503 (W.D. Pa. 2018) ("[H]arm caused by student-on-student bullying is not a constitutional harm that *Monell* protects against.").

[66]   *G.S. v. Penn-Trafford Sch. Dist.*, 813 F. App'x 799, 803 (3d Cir. 2020).

### C.    Procedural Due Process

To state such a claim, Plaintiffs "must allege that [the Minor Students] [were] deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property and that the available procedures did not provide due process of law."[67] "Critically, the deprivation of the protected interest must be attributable to the [School] District, not a private actor."[68]

In the matter at hand, Plaintiffs have alleged that Defendants' actions, or rather inactions, resulted in the deprivation of her access to educational benefits and opportunities.[69] It is well-established that, under Pennsylvania law, students have "a legitimate claim of entitlement to a public education" and, therefore, public education is an individual interest protected by the Fourteenth Amendment.[70] Consequently, Plaintiffs have adequately alleged the denial of a protected interest.

However, the Third Circuit has made clear that the deprivation of a private interest must be attributable to the School District, not private actors such as other

---

[67]   *Thompson v. State of Del. Dep't of Servs. for Child., Youth & Their Fams.*, 44 F.4th 188, 194 (3d Cir. 2022) (internal quotation marks omitted).

[68]   *Monn v. Gettysburg Area Sch. Dist.*, 553 F. App'x 120, 123 (3d Cir. 2014) (citing *Phila. Police & Fire Ass'n for Handicapped Children, Inc. v. City of Philadelphia*, 874 F.2d 156, 169 (3d Cir. 1989)).

[69]   Doc. 20 ¶¶ 68-70.

[70]   *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 149 (3d Cir. 2005).

students.[71] Plaintiffs contend that the School District failed to follow established policies for dealing with bullying and racially-motivated harassment, "but the determination of what process is 'due' is 'not to be found in statutes . . . [but] is a question of federal constitutional law.'"[72] And the "fundamental requirement of due process is the opportunity to be heard in a meaningful time and in a meaningful manner."[73]

In another case involving peer-on-peer bullying, a court in the Third Circuit stated that "it would make no sense to apply these standards [of procedural due process] in this case and suggest that [the defendant] should have provided [the plaintiff] with notice and an opportunity to be heard before the group of boys [who] bullied him to the extent that his education was interfered with."[74] The court also noted that the bullied plaintiffs *did* have an opportunity to complain about the bullying, even if the defendants "did not take action in response," ultimately finding that "the facts of this case simply do not state a claim under the procedural due process clause."[75]

The same is true here. While the Amended Complaint argues that Defendants did not follow the School District's policies and procedures, it is also

---

[71]   *Monn*, 553 F. App'x at 123 (citing *Phila. Police & Fire. Ass'n for Handicapped Children, Inc. v. City of Phila.*, 874 F.2d 156, 169 (3d Cir. 1989)).

[72]   *Alderette v. Lawrence Cty. Career & Tech Ctr.*, No. 18-958, 2018 U.S. Dist. LEXIS 213139, at *34 (W.D. Pa. Dec. 19, 2018) (internal citations omitted).

[73]   *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

[74]   *Alderette*, 2018 U.S. Dist. at *34.

[75]   *Id.*

replete with examples of Plaintiffs and the Minor Students having a dialogue with various individuals within the School District, which included phone calls, videoconferences, and in-person meetings. They had an opportunity to be heard in a meaningful time and a meaningful manner; reactions to those complaints, and any alleged action or inaction, is not relevant to the inquiry of whether the Minor Students were afforded procedural due process. Therefore, Defendants' Motion to Dismiss Counts III and Count V (with respect to procedural due process) is granted.

### D.   Substantive Due Process

As to Plaintiffs' claim for a violation of the Minor Students' substantive due process rights, "[t]he Supreme Court has long established that 'as a general matter, a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.'"[76] As such, a school district generally cannot be held liable for failing to protect students from student-on-student harassment, no matter how "unfair and unjust" the school's response to such harassment is.[77]

Nevertheless, two exceptions exist to that general rule. First, a school may have a duty to protect against harm from third parties when the "special relationship exception" applies—that is, "when a special relationship has been

---

[76] *Morrow*, 719 F.3d at 166 (quoting *DeShaney v. Winnebago Cnty. Dep't of Social Servs.,* 489 U.S. 189, 197 (1989)) (brackets and ellipsis omitted).

[77] *Id.*

established because 'the State takes a person into its custody and holds him there against his will.'"[78] Second, a duty may be imputed to a school where the "state-created danger exception" applies, which occurs when "the state's own actions create the very danger that causes the plaintiff's injury."[79] Neither exception applies here.

With respect to the first exception, the Third Circuit in its *en banc* opinion in *Morrow v. Balaski* determined that "public schools, as a general matter, do not have a *constitutional* duty to protect students from private actors."[80] Consequently, in ordinary circumstances no special relationship will exist between a school and its students, although there remains "the possibility of a special relationship arising between a *particular* school and *particular* students under certain unique and narrow circumstances."[81] That is to say, a special relationship will not arise solely from "compulsory school attendance laws and the concomitant *in loco parentis* authority and discretion that schools necessarily exercise over students, or the school's failure to do more to protect" its students in any particular situation.[82]

The Amended Complaint does not allege any facts demonstrating any unique and narrow circumstances between the School District and the Minor Students that would give rise to a special relationship. While Plaintiffs do argue

---

[78]   *Id.* at 167 (quoting *DeShaney,* 489 U.S. at 199-200).
[79]   *Id.*
[80]   *Id.* at 170.
[81]   *Id.* at 171.
[82]   *Id.*

that a special relationship exists due to Pennsylvania's compulsory school attendance laws, this approach was rejected by the Third Circuit in *Morrow*—a point which Plaintiffs seem to concede.[83] Plaintiffs' attempts to skirt around this fact by citing the existence of dissenting opinions in *Morrow* are unpersuasive.[84] Accordingly, Plaintiffs have failed to plead the existence of a special relationship such that Defendants may be held liable for an alleged violation of the Minor Students' substantive due process rights.

With respect to the second exception, to adequately allege "state-created danger," a plaintiff must allege:

> 1) the harm ultimately caused was foreseeable and fairly direct;
>
> 2) a state actor acted with a degree of culpability that shocks the conscience;
>
> 3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.[85]

Setting aside prongs one and three, the Amended Complaint's allegations are insufficient to establish the second and fourth prongs of the state-created danger

---

[83]  Doc. 37 at p. 38.

[84]  *Id.*

[85]  *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 242 (3d Cir. 2016) (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)).

test. With regard to the second prong, "[f]or behavior by a government officer to shock the conscience, it must be more egregious than 'negligently inflicted harm,' as mere negligence 'is categorically beneath the threshold of constitutional due process.'"[86] "Instead, 'only the most egregious official conduct can be said to' meet that standard."[87] Action that is taken, as here, "after time for unhurried judgments and careful deliberation may shock the conscience if done with deliberate indifference."[88] In such circumstances, an official's "actions may shock the conscience if they reveal a conscious disregard of a great risk of serious harm."[89]

The Amended Complaint includes numerous allegations where harassment was reported to school officials—in fact, *every* incident alleged in the Amended Complaint was reported to someone.[90] Various remedial actions were taken: meetings were held; offending students were spoken to and disciplined; a written slur was removed from the cafeteria table; footage was collected and reviewed; interviews were conducted.[91] While these remedial actions clearly fell short of Plaintiffs' expectations, and while they were not enough to prevent the bullying

---

[86] *Haberle v. Troxell*, 885 F.3d 170, 177 (3d Cir. 2018) (quoting *City of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)).
[87] *Id.* (quoting *Lewis*, 523 U.S. at 846).
[88] *Id.* (internal quotation marks omitted).
[89] *Id.* (internal quotation marks omitted).
[90] Doc. 20, throughout.
[91] *Id.*

23

from continuing, it cannot be said that the School Districts' actions were taken with a degree of culpability that shocks the conscience.

With respect to the fourth prong, Plaintiffs must allege "an affirmative act that put [the Minor Students] in danger or made [them] more vulnerable to risk."[92] The Third Circuit has "explained that the line between action and inaction is not always easily drawn," but has noted that a plaintiff may not "simply attempt[] to redefine clearly passive inaction as affirmative acts."[93]

Plaintiffs' allegations fall short of meeting the fourth prong of the state-created danger exception because they do not allege that the School District took any affirmative acts that made the Minor Students *more* vulnerable to harm. Plaintiffs argue that the School District engaged in the following affirmative acts: disbanding the diversity committee; ceasing working with local organizations to combat racism or discrimination; providing Plaintiffs with inconsistent and contradictory information regarding the incidents; not properly communicating internally or adhering to policies despite assurances that they were doing so. In the Court's view, Plaintiffs are "attempting to redefine clearly passive inaction as affirmative acts" in a manner that is not permitted in the Third Circuit. Essentially, Plaintiffs' allegations are couched in what the School District did *not* do—they did *not* follow their policies, they did *not* provide accurate information, they did *not* follow through to create a diversity committee—all amounting to allegations of

---

[92] *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 172 (3d Cir. 2017).
[93] *Morrow*, 719 F.3d at 177-78.

inaction. And in the Third Circuit, such inaction—failing to adequately respond to the harassment—is plainly insufficient to satisfy the fourth prong.[94] *Morrow v. Balaski* makes that quite clear.

Because the Amended Complaint does not sufficiently allege either a special relationship or a state-created danger, the School District's Motion to Dismiss Count IV is granted.

### E.    Leave to Amend

Plaintiffs will be granted leave to file a Second Amended Complaint, should they choose to do so. The Third Circuit has directed that, when a complaint is vulnerable to dismissal under Rule 12(b)(6), a court "must permit a curative amendment unless such an amendment would be inequitable or futile."[95] Our Court of Appeals has also stated that:

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.[96]

With respect to futility, the Third Circuit has sanctioned denial of leave to amend "if the amended complaint would not survive a motion to dismiss for failure

---

[94] *See Morrow*, 719 F.3d at 178; s*ee also Bridges*, 644 F. App'x at 177-78 (concluding that district court properly "found Appellants failed to establish a claim under a state-created danger theory" as "Appellants' student-on-student bullying claims rest on the contention that it was the School District's *inaction* that put D.B. at an additional risk of harm").

[95] *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

[96] *Id.*

to state a claim upon which relief could be granted."[97] As detailed above, Plaintiffs may plausibly state a claim for relief as to all counts that will be dismissed, with the exception of those that they agree should be dismissed (and Plaintiffs should consider this carefully), and any Title VI claims brought by Plaintiffs on behalf of themselves and not the Minor Students. The factual deficiencies in Plaintiffs' claims may be rectified by providing more concrete factual details (should they exist) regarding the responses to, and punishments imposed for, the alleged incidents, and to whom the various incidents were reported. Plaintiffs are advised not to creatively attempt to re-state facts that have already been alleged. If there are no new facts to be alleged, or to be alleged more completely, then amendment is discouraged.

## IV.   CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss the Amended Complaint is granted, but with leave for Plaintiffs to again amend their complaint—with the exception of the Title VI claim asserted by Adam and Catiese Williams in their individual capacities, which is dismissed with prejudice.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[97] *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).