**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ADAM WILLIAMS and CATIESE WILLIAMS, individually and as parents and natural guardians of NW and KW, their minor children,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>JERSEY SHORE AREA SCHOOL DISTRICT; BRIAN T. ULMER; STEVEN KEEN; and ELIZABETH SEAGRAVES,<br><br>　　　　　Defendants. | No. 4:22-CV-00473<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**DECEMBER 15, 2023**

This case arises out of allegations of repeated racially motivated taunting and other harassment of NW and KW, students attending schools within the Jersey Shore Area School District. The Court previously granted the Defendants' Motion to Dismiss, finding that Plaintiffs were not met with deliberate indifference in response to their reports of harassment. Amending their Complaint, Plaintiffs clarified that, while Defendants may have told Plaintiffs they investigated the incidents and punished identified harassers, Plaintiffs have seen no evidence that such corrective measures were taken. Therefore, the Court will permit certain of Plaintiffs' claims to proceed to discovery.

## I.    BACKGROUND

### A.    Factual Background[1]

Plaintiffs Adam and Catiese Williams are the adult parents of NW and KW (the "Minor Students"), both minors and students in the Jersey Shore Area School District (the "School District" or "JSASD").[2] Defendants are JSASD and Brian T. Ulmer (the Superintendent of the School District), Steven Keen (the Principal of Jersey Shore High School), and Elizabeth Seagraves (the Assistant Principal of Jersey Shore High School) (the "Individual Defendants").[3] NW and KW are biracial; their father is white and their mother is black.[4] The Second Amended Complaint describes several events that NW and KW experienced while enrolled in the School District. For the sake of brevity, the Court will summarize and describe the salient features of each incident in the below chart.

---

[1]    As discussed below, for purposes of this motion, the Court accepts as true all allegations contained in the Second Amended Complaint. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020) (in evaluating motion to dismiss court "must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief" (internal quotation marks omitted)).

[2]    Second Am. Compl. ("SAC"), Doc. 48 ¶¶ 1, 6.

[3]    *Id.* ¶¶ 2-5.

[4]    *Id.* ¶ 11.

| Date | Summary | Relevant Actions Taken and Outcome |
|------|---------|-------------------------------------|
| Fall 2019[5] | Students told NW they wanted to sell him on the slave stage, they wished they could travel back in time so that they could own him as a slave and whip him, that he only eats watermelon and drinks Kool-Aid, referred to him as a "monkey," and told him he was only good at sports and a fast runner because he is black. | Plaintiffs and NW reported the incidents to school administrators. Meetings were held with NW and the harassing students; Plaintiffs were never contacted. |
| February 2020[6] | A video was captured of JSASD high-school students chanting "a call-and-response racial slur regarding African Americans, *i.e.*, 'I say N you say IGGER.'" | None |
| Summer/ Fall 2020[7] | Students told NW (a member of the High School freshman football team) that he was only good at sports because he was black. | Plaintiffs reported to the School District's Athletic Director, who said she would investigate. The Athletic Director ultimately told Plaintiffs, without explanation, that the allegations were unfounded. |
| March 2021[8] | A fellow student called KW the n-word. | KW reported the incident to the Middle School Principal and Assistant Principal. Plaintiffs and KW met with school administrators and the harassing student and his/her mother. The student apologized to KW. Administrators asked KW to be part of an ethics committee that never materialized. KW later transferred schools. |

---

[5]  *Id.* ¶¶ 60-65.
[6]  *Id.* ¶¶ 66-67
[7]  *Id.* ¶¶ 68-79.
[8]  *Id.* ¶¶ 80-95.

| Date | Summary | Relevant Actions Taken and Outcome |
|------|---------|-------------------------------------|
| September 2021[9] | Students called NW the n-word, made comments about hanging NW, and made other racist remarks. | Plaintiffs reported the event to Seagraves, Ulmer, and Keen. Despite assurances from Seagraves that she would investigate the matter, no evidence that such an investigation occurred was shared with the Plaintiffs. |
| October 2021[10] | Four students called NW the n-word while he was walking down the hallway of the high school. | Plaintiffs reported this and prior incidents to Seagraves who said that she would investigate and discuss the matter with Ulmer and Keen. Seagraves called Catiese Williams and told her that "even though on video, they were unable to identify the four students in the hall." No evidence of any additional efforts made to identify the students were shared with Plaintiffs. Ulmer subsequently told Plaintiffs on November 9 that he was unaware of most of the prior events. |
| November 10, 2021[11] | Students harassed NW during homeroom by making remarks and writing letters on the whiteboard, which alluded to the n-word. | Plaintiffs left a phone message for Ulmer and did not hear back. They then met with Keen and Seagraves to discuss the incidents. Keen asked for some time to investigate the incident. |

---

[9]   *Id.* ¶¶ 96-104.
[10]   *Id.* ¶¶ 105-129.
[11]   *Id.* ¶¶ 130-148.

| Date | Summary | Relevant Actions Taken and Outcome |
|------|---------|-----------------------------------|
| November 12, 2021[12] | Another student reported harassment by a student who had previously harassed NW. | Keen called Catiese Williams to say he had met with NW and was continuing to look into the incidents. Ulmer then called Catiese Williams and told her that "consequences were issued to certain students." |
| November 18, 2021[13] | Students accused NW of exaggerating the racist incidents and getting others in trouble. | Plaintiffs and NW met with Keen and Seagraves, who had NW fill out a discrimination report form. This was the first time that such a report was completed by either Plaintiffs or Defendants. |
| December 13, 2021[14] | NW found the n-word carved in the table where he usually sat for lunch. | NW and Catiese Williams reported the incident to Keen, who investigated the incident by reviewing camera footage and interviewing students. Keen also informed Catiese that he had the n-word removed from the table. |
| January 18, 2022[15] | A student showed NW a photo of a Ku Klux Klan member on the student's phone. | Catiese Williams reported the incident to the School Resource Officer, who told her that none of the prior incidents had been reported to him. Further, Ulmer failed to share evidence of the prior incidents with the Resource Officer prior to a meeting with Plaintiffs. The Resource Officer documented the incident and informed Catiese Williams that there was "not enough to press harassment charges" against the student. |

---

[12]   *Id*. ¶¶ 149-157.
[13]   *Id*. ¶¶ 158-181.
[14]   *Id*. ¶¶ 182-206.
[15]   *Id*. ¶¶ 207-235.

Defendants also failed to report each of these incidents in JSASD's Safe School Reports.[16] Safe School Reports are annual reports that school districts in Pennsylvania must submit to the Pennsylvania Department of Education containing data regarding incidents of harassment, including racial and ethnic intimidation as defined by Pennsylvania law.[17] As JSASD's chief school administrator, Ulmer had the statutory responsibility to complete and submit the Safe School Reports.[18] JSASD's Safe School Reports for the relevant period include data regarding other incidents such as sexual harassment and threatening school officials and students.[19]

Also, in about 2010, the School District created a "Diversity Committee" in response to reports of racial harassment by a student and his mother.[20] The Committee, among other things, "presented training for students, staff, and the general public concerning racial harassment."[21] Then, after the student was no longer enrolled at JSASD, the school disbanded the Committee.[22]

The Second Amended Complaint also attached and described the School District's written policies and procedures regarding racial discrimination,

---

[16]   *Id.* ¶¶ 62, 67, 79, 95, 104, 129, 148, 157, 181, 206, 235. *See also id.* Exs. F-I (Safe School Reports for 2019-2022).

[17]   *Id.* ¶¶ 33-34 (citing 18 Pa. C.S.A. § 2710(a)).

[18]   *Id.* ¶ 36 (citing 24 P.S. § 13-1303-A(b)).

[19]   *Id.* ¶ 42.

[20]   *Id.* ¶¶ 47-59.

[21]   *Id.* at ¶ 50.

[22]   *Id.* at ¶ 55.

harassment, retaliation, and bullying.[23] Plaintiffs allege that Defendants' conduct in responding to the above-listed incidents violated those policies and procedures.[24]

## B.     Procedural History

Plaintiffs initiated this lawsuit with an original Complaint filed on March 29, 2022[25] and subsequently filed an Amended Complaint on September 1, 2022.[26] The Court granted Defendants' Motion to Dismiss the Amended Complaint[27] on May 17, 2023 without prejudice, except as to the Title VI claims brought by the Williamses in their individual capacity which were dismissed with prejudice.[28] Plaintiffs filed a Second Amended Complaint on June 21, 2023 and Defendants filed a Motion to Dismiss that complaint on August 1, 2023.[29] The Motion is briefed and ripe for disposition.[30]

---

[23]   *Id*. ¶¶ 15-28, Exs. A through E.

[24]   See, *e.g.*, *id*. ¶¶ 31-32.

[25]   Compl., Doc. 1.

[26]   First Am. Compl. ("FAC"), Doc. 20.

[27]   Mtn. to Dismiss FAC, Doc. 23.

[28]   May 17, 2023 Ord. ("FAC Ord."), Doc. 44; *see also* May 17, 2023 Mem. Op. ("FAC Op."), Doc. 43. The Court's May 17 Order stated that all of the Williams' individual claims were dismissed with prejudice. This was a typographical error. *Compare* FAC Ord. ¶¶ 2-3 *with* FAC Op. 7 n.22, Section IV. *See also* Br., Doc. 55 at 26-27 (observing that the Court granted Adam and Catiese Williams the opportunity to amend the complaint with respect to Counts II-V). The Court regrets the error, which appears to have caused some confusion on the part of Plaintiffs. *See* Br., Doc. 60 at 3 (stating that all of the individual capacity claims were dismissed with prejudice). Nevertheless, nothing in the Second Amended Complaint gives the Court cause to revisit its prior holding that Adam and Catiese Williams' individual claims are derivative of their children's claims.

[29]   Mtn. to Dismiss SAC ("MTD"), Doc. 51.

[30]   Br. Supp. MTD ("BIS"), Doc. 55; MTD Opp'n Br. ("BIO"), Doc. 60. Defendants did not file a Reply brief.
       While on the topic of the parties' briefs, the Court encourages the parties to ensure that future filings comply with the Local Rules. Though the structure of the briefs may appear obvious to the attorneys who drafted them, the Court found itself having to scroll through the parties'

## II.    LAW

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following *Bell Atlantic Corp. v. Twombly*[31] and *Ashcroft v. Iqbal*,[32] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[33] In deciding a motion to dismiss, courts within the United States Court of Appeals for the Third Circuit must follow three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) assume the veracity of all well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief.[34]

## III.    ANALYSIS

The Second Amended Complaint brings the following causes of action: (1) violation of Title VI of the Civil Rights Act of 1964, on behalf of NW and KW against the School District;[35] (2) violation of the Equal Protection Clause of the

---

briefs to find their arguments, a task made more difficult by the length of the briefs and the absence of tables of contents. It should go without saying, but it benefits the parties if the Court can easily navigate their submissions.

[31]   550 U.S. 544 (2007).

[32]   556 U.S. 662 (2009).

[33]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

[34]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[35]   SAC ¶¶ 261-264.

Fourteenth Amendment of the United States Constitution, against the Individual Defendants;[36] (3) violation of the Fourteenth Amendment's Procedural Due Process protections, against the Individual Defendants;[37] (4) violation of the Fourteenth Amendment's Substantive Due Process protections, against the School District;[38] and (5) violation of the Fourteenth Amendment's Equal Protection and Procedural Due Process protections, against the School District.[39]

## A.    Title VI Claims

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[40] Accordingly, "Title VI prohibits intentional discrimination based on race in any program that receives federal funding."[41] To state a claim of racial discrimination under Title VI, a plaintiff must allege (1) "there is racial or national origin discrimination" and (2) "the entity engaging in discrimination is receiving federal financial assistance."[42]

As to the first element, when a claim is based upon the school's "failure to address a racially hostile environment," a plaintiff "may recover for alleged

---

[36]   *Id.* ¶¶ 265-269.
[37]   *Id.* ¶¶ 270-275.
[38]   *Id.* ¶¶ 276-279.
[39]   *Id.* ¶¶ 280-282.
[40]   42 U.S.C. § 2000d.
[41]   *Bridges ex rel. D.B. v. Scranton Sch. Dist.*, 644 F. App'x 172, 179 (3d Cir. 2016).
[42]   *Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 655 (E.D. Pa. 2020).

'severe, pervasive, and objectively offensive' harassment if the school 'acts with deliberate indifference to known acts of harassment.'"[43] Moreover, "[t]he School District can only be held liable for a Title VI claim of racial discrimination when its response is 'clearly unreasonable in light of the known circumstances.'"[44] Stated differently, "a plaintiff must demonstrate 'severe *or* pervasive' harassment based on the student's race, and 'deliberate indifference to known acts of harassment.'"[45]

Further, "Title VI 'prohibits only intentional discrimination'"[46] and, as such, school districts may only be held liable for instances of harassment "'of which they have actual knowledge.'"[47] To demonstrate knowledge, a plaintiffs must allege that the harassment was reported to an "appropriate person" who "is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination."[48] Therefore, "a school district cannot be held liable for the acts of its teachers or staff through *respondeat superior* liability."[49] Even a single use of

---

[43] *Bridges*, 644 F. App'x at 179 (quoting *Davis v. Monroe Cty. Bd. of Educ.,* 526 U.S. 629, 633 (1999)).

[44] *Id.* (quoting *Davis,* 526 U.S. at 648).

[45] *L. L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545, 549 (3d Cir. 2017) (quoting *Castleberry v. STI Group*, 863 F.3d 259, 264 (3d Cir. 2017); *Davis,* 526 U.S. at 633).

[46] *Moore*, 471 F. Supp. 3d at 656 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001)).

[47] *Id.* (quoting *Davis*, 526 U.S. at 650).

[48] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Although *Gebser* addressed a claim under Title IX rather than Title VI, "the scope of Title VI is defined in terms nearly identical to Title IX . . . [and] Courts have consistently applied the same legal analysis to construe Title VI and Title IX." *Smith v. Nat'l Collegiate Athletic Ass'n*, 266 F.3d 152, 157-58 (3d Cir. 2001) (internal citation omitted).

[49] *Moore*, 471 F. Supp. 3d at 656.

the "n-word" is sufficiently severe to satisfy the required level of harassment necessary to sustain a Title VI claim.[50]

In my prior Opinion, I found that Plaintiffs sufficiently alleged that the Minor Students suffered pervasive harassment and that JSASD had actual knowledge of the harassment.[51] Nothing in the Second Amended Complaint gives the Court cause to revisit those issues. Therefore, the relevant inquiry remains whether JSASD's response was clearly unreasonable or taken with knowledge that it would cause the Minor Students to undergo further harassment.

Defendants suggest that JSASD's responses to the reports by Plaintiffs as detailed in the Second Amended Complaint—*i.e.*, timely investigations, meetings with Plaintiffs, and discipline of the identified harassers—were not clearly unreasonable.[52] Plaintiffs respond that, though "Defendants *said* that certain things would be done or had been done" after Plaintiffs repeated reports of harassment, they "never provided any evidence that any actions whatsoever had been taken."[53]

Dismissing the First Amended Complaint, the Court agreed with the School District, noting that the "collective response to the various ongoing harassment incidents included meetings with Plaintiffs and the Minor Students, investigations of the incidents and the offending students, disciplinary action, documentation of the incidents, and review of camera footage," while "apparently not sufficient to

---

[50] *L. L.*, 710 F. App'x at 549 (citing *Castleberry*, 863 F.3d at 264).
[51] FAC Op. 10.
[52] BIS 72-74.
[53] BIO 46 (emphasis in original).

stop the bullying," was not the response of a deliberately indifferent School District.[54]

As to KW, the Court agrees with the School District. Following the March 2021 incident, the only incident which names KW, Adam Williams met with the Principal, Assistant Principal, and School Resource Officer.[55] Following that meeting, a Zoom meeting was held with the offending student and his mother who both apologized to Catiese Williams and KW.[56] Though the School District apparently fell through on its promise to form an "ethics committee" following the incident, the response here does not rise to the level of deliberate indifference.

However, the Court finds that the Title VI claims as to NW as pled in the Second Amended Complaint are sufficient to survive a motion to dismiss. Plaintiffs clarify in their latest Complaint that, aside from the Fall 2019 incident in which meetings were held with the offending students, they have no actual knowledge that any actions were taken other than meeting with the Plaintiffs.

The School District maintains that, despite efforts such as reviewing surveillance footage, investigations into reported harassment were unable to identify the harassers.[57] However, the Second Amended Complaint does not "confirm[] that School District officials investigated the matter[s]."[58] Instead, it

---

[54] FAC Op. 10.
[55] SAC ¶ 85.
[56] *Id.* ¶ 86.
[57] *E.g.*, BIS 73-74
[58] *Id.* at 73.

merely says that is what Plaintiffs were told. Perhaps School District officials were honest and forthright with the Plaintiffs and, despite their efforts, unable to identify the harassers. However, that is a question to be resolved after fulsome discovery has taken place, not on a motion to dismiss.

The Court will grant Defendants' Motion on Count I as to KW, and deny Defendant's Motion on Count I as to NW.

### B.    Equal Protection Claims

Counts II and V bring equal protection claims against the Individual Defendants and the School District, respectively. The Court will first analyze the claim against the Individual Defendants, followed by the claim against the School District.

### 1.    Individual Defendants

In Count II of the Amended Complaint, Plaintiffs argue that the Individual Defendants violated the Minor Students' rights under the Equal Protection Clause by their "actions, failures and refusals" demonstrated during the alleged incidents.[59] The Individual Defendants argue that Plaintiffs fail to sufficiently plead facts giving rise to the conduct required for a viable claim under 42 U.S.C. § 1983.[60]

"To succeed on a § 1983 equal protection claim of deliberate indifference to student-on-student racial harassment, well established law requires a plaintiff to

---

[59]    SAC ¶ 268.
[60]    BIS Section IV.C.1.

13

prove (1) that the child in question was in fact harassed by other students based on his race; (2) that such race-based harassment was actually known to the defendant school official; and (3) that the defendant's response to such harassment was so clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that the defendant himself intended for the harassment to occur."[61]

In my Opinion dismissing the First Amended Complaint, I found that Plaintiffs had sufficiently alleged that both KW and NW were harassed by other students according to their race and that, as to NW, at least five of the alleged incidents sufficiently plead facts that the Individual Defendants knew of the harassment.[62] As to KW, I found that the failure to name any of the Individual Defendants precluded any claim that the Defendants had knowledge of the harassment.[63] Plaintiffs' addition of the conclusory allegation that "Ulmer knew that KW's leaving JSASD" due to the harassment is insufficient to change this.

As to the third prong, the Court previously found that the Individual Defendants' response was not "so clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that [they themselves] intended for the harassment to occur."[64] "[F]or the purposes of an Equal Protection

---

[61] *DiStiso v. Cook*, 691 F.3d 226, 241 (2d Cir. 2012) (internal citations and quotation marks omitted).
[62] FAC Op. 12-13.
[63] *Id.* at 13.
[64] FAC Op. 13 (quoting *DiStiso*, 691 F.3d at 241).

claim, showing 'deliberate indifference' by a school or 'any third party under its control' is sufficient to demonstrate intentional discrimination."[65] "Deliberate indifference to discrimination can be shown from a defendant's clearly unreasonable actions or inaction in light of known circumstances."[66]

Here, the alleged failure of the Individual Defendants to take any actions to investigate the reports by NW and his parents is sufficient to establish deliberate indifference. Therefore, as to NW, Plaintiffs have stated a claim for discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.

The Court now turns to the Individual Defendants' argument that they are entitled to qualified immunity because "there is absolutely no existing law which was clearly established . . . in the fall of 2021 that suggests the actions taken by Ulmer, Keen, and Seagraves,"—"promptly responding, scheduling and engaging in meetings with NW and his parents, investigating the incidents reported, reporting back on what they had found and/or done thus far, even if lacking results, and taking action to administer consequences to students, and providing remedial measures requested by N.W. where possible"—"violat[ed] the rights of [NW] nor were they clearly unreasonable in light of the known circumstances."[67] This

---

[65] *Goodwin v. Pennridge Sch. Dist.*, 309 F. Supp. 3d 367, 378 (E.D. Pa. 2018) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 297 (3d Cir. 2014); citing *Davis*, 526 U.S. at 646-67).

[66] *Doe v. Cape Henlopen Sch. Dist.*, 759 F. Supp. 2d 522, 532 (D. Del. 2011) (citing *Gant*, 195 F.3d at 140).

[67] BIS 54-55.

misstates Plaintiffs' allegations. Plaintiffs allege that, aside from meeting with NW and his parents, the Individual Defendants only *said* that they did these things.

Defendants also suggest that the Third Circuit has foreclosed liability for school officials in the absence of an affirmative act.[68] Defendants' cited authority is inapposite as it discusses the standard for stating a claim of a state created danger, which the Court discusses below.[69]

For their part, Plaintiffs simply state that, because "[t]he 'central purpose' of the Equal Protection Clause is 'the prevention of official conduct discriminating on the basis of race,'" that the law is therefore clearly established.[70] However, this states the law at too high a level of generality to bear on whether the conduct, or lack thereof, at issue violated the Constitution.[71]

To determine whether the Individual Defendants are entitled to qualified immunity, the Court determines whether Plaintiffs have alleged a violation of a constitutional right and, if so, if that right was clearly established at the time of the violation.[72] As the Court noted in its prior Opinion, the Third Circuit has not addressed whether school administrators can be held liable for race discrimination under the Equal Protection Clause if the plaintiff demonstrates deliberate

---

[68]  *Id.* at 55 (citing *Alderette v. Lawrence County Career and Technical Center*, 2018 WL 6680576 (W.D. Pa 2018)).

[69]  *Infra* Section III.D.

[70]  BIO 69 (quoting *DiStiso*, 691 F.3d at 240; *Washington v. Davis*, 426 U.S. 229 (1976)).

[71]  *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

[72]  *Hewlette-Bullard on behalf of J.H-B. v. Pocono Mountain Sch. Dist.*, 522 F. Supp. 3d 78 (M.D. Pa. 2021) (citing *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018)).

indifference on the part of the defendants themselves.[73] In the absence of factually analogous Supreme Court precedent or binding Third Circuit opinions, a right may still be clearly established if there "exists a 'robust consensus of persuasive authority in the Courts of Appeals.'"[74]

In addition to the Second Circuit, the Fourth,[75] Sixth,[76] Seventh,[77] Ninth,[78] Tenth,[79] and Eleventh[80] Circuits have held that an individual may be held liable under the Equal Protection Clause for deliberate indifference to student-on-student harassment. The Court notes that the cases of the Courts of Appeals, except for the Second Circuit, deal with instances of sexual harassment, rather than racial discrimination. However, the Equal Protection Clause applies with equal force in both circumstances, and there is no principled basis to distinguish the two.[81] No competent school administrator would believe that, to the extent that the Equal

---

[73] FAC Op. 12; *accord Dickerson v. Wallkill Valley Reg'l High School Bd. of Educ.*, 2020 WL 2847757, at *4 (D.N.J. June 1, 2020).

[74] *Johnson v. Lias*, 21 F.4th 74, 81 (3d Cir. 2021) (quoting *Fields v. City of Phila.*, 862 F.3d 353, 361 (3d Cir. 2017); *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 247-48 (3d Cir. 2016)).

[75] *Feminist Majority Foundation v. Hurley*, 911 F.3d 674, 702 (4th Cir. 2018).

[76] *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 851-52 (6th Cir. 2016).

[77] *See Nabozny v. Podlesny*, 92 F.3d 446 (7th Cir. 1996).

[78] *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130 (9th Cir. 2003).

[79] *See Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1250 (10th Cir. 1999) (finding student stated Equal Protection claim against individual defendants who "acquiesced in [harassment] by refusing to reasonably respond to it").

[80] *See Hill v. Cundiff*, 797 F.3d 948, 978 (11th Cir. 2015) (observing that a school principal may be held liable for under the Equal Protection Clause).

[81] *See Hurley*, 911 F.3d at 702 n.17 (citing approvingly the Second Circuit's opinion in *DiStiso* in a case of student-on-student sexual harassment).

Protection Clause requires her to act in response to sexual harassment, that she would not be similarly required to act in response to race-based harassment.[82]

The Court will grant Defendants' Motion on Count II as to KW and deny it as to NW.

### 2. School District

In Count V of the Amended Complaint, Plaintiffs argue that the School District violated the Minor Students' rights under the Equal Protection Clause by their "actions, failures and refusals" demonstrated during the alleged incidents, and by maintaining a "pattern, practice, policy and custom" of "deliberate indifference: to recognizing, investigating, and remedying racial discrimination."[83] The School District argues that Plaintiffs fail to sufficiently plead facts demonstrating a policy or custom under 42 U.S.C. § 1983 and the standard set forth in *Monell v. The New York City Department of Social Services* and its progeny.[84]

It is established that when a municipal organization is named in a Section 1983 suit, that organization may only be held "liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom."[85] "Policy is made when a decisionmaker possessing final authority to establish

---

[82] *See al-Kidd*, 563 U.S. at 743 (observing that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law") (citation omitted).

[83] SAC ¶¶ 280-282.

[84] 436 U.S. 658 (1978); BIS Section IV.B.

[85] *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013) (internal citation omitted).

municipal policy with respect to the action issues an official proclamation, policy, or edict."[86] "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."[87] The United States Court of Appeals for the Third Circuit has explained that "[t]o satisfy the pleading standard, [plaintiffs] must identify a custom or policy, and specify what exactly that custom or policy was."[88]

> An individual's conduct implements official policy or practice under several types of circumstances, including when (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.[89]

"Although a policy or custom is necessary to plead a municipal claim, it is not sufficient to survive a motion to dismiss. A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries."[90] "He may do so by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges."[91] Plaintiffs may demonstrate an affirmative

---

[86] *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (brackets and internal quotation marks omitted).

[87] *Id.* (internal quotation marks omitted).

[88] *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

[89] *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006).

[90] *Roman*, 914 F.3d at 798.

[91] *Id.*

link by alleging that the municipal organization "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiff's] injury."[92] A plaintiff "does not need to identify a responsible decisionmaker in [their] pleadings . . . [n]or [are they] required to prove that the custom had the [organization's] formal approval."[93]

Plaintiffs suggest that the "failures and refusals to act" stem from a custom of deliberate indifference to racial discrimination.[94] Defendants argue that "Plaintiffs' claims must be dismissed because they again remain entirely asserted on allegations that the School District *failed to act*, and/or inadequately or unsuccessfully acted"[95] and that "the harm at issue here was caused by . . . student-on-student bullying, which simply 'is not a constitutional harm *Monell* protects against.'"[96]

"Deliberate indifference stems from government inaction, namely a municipality's failure to train its employees on avoiding constitutional violations" or "a failure to act despite notice that municipal employees continually violate citizens' rights."[97] Plaintiffs have alleged that JSASD ended a program for training

---

[92] *Id.* (brackets, ellipsis, and internal quotation marks omitted).
[93] *Id.* (internal citation and quotation marks omitted).
[94] SAC ¶ 281.
[95] BIS 44 (emphasis in original).
[96] *Id.* at 39 (quoting *Lansberry v. Altoona Area Sch. Dist.*, 356 F. Supp. 3d 486, 503 (W.D. Pa. 2018).
[97] *Lansberry v. Altoona Area Sch. Dist.*, 318 F. Supp. 3d 739, 758-59 (W.D. Pa. 2018) (citing *Wright v. City of Philadelphia*, 685 F. App'x 142, 147 (3d Cir. 2017)).

staff regarding racial harassment,[98] ignored incidents of such harassment,[99] failed to report such harassment as required by Pennsylvania law,[100] all while failing to have a "real discussion" about alleged harassment.[101] Thus, the allegations of the Second Amended Complaint go beyond a "mere failure to act or investigate."[102]

Having found that that the Plaintiffs have plausibly alleged a custom of deliberate indifference to racial harassment, the Court turns to whether Plaintiffs have alleged that custom was the cause of a constitutional injury. Defendants have cited several cases in support of their argument that student-on-student bullying is not a constitutional injury. However, as above, the cited cases largely concern different claims than the one brought here.[103] The alleged disparate treatment of claims of racial harassment from other claims of harassment is sufficient to state a claim under the Equal Protection Clause.[104] Moreover, at this stage of the proceedings, Plaintiffs have adequately alleged that the harassment they suffered was caused by JSASD's acquiescence of racial discrimination.[105]

---

[98]   SAC ¶¶ 47-59.

[99]   *E.g.*, *id.* ¶¶ 66-67.

[100]   *E.g.*, *id.* ¶¶ 62, 67, 79, 95, 104, 129, 148, 157, 181, 206, 235.

[101]   *E.g.*, *id.* ¶ 215.

[102]   *Cf. Moore*, 471 F. Supp. 3d at 668.

[103]   *E.g.*, *Byrne v. Springfield Sch. Dist.*, 2021 WL 4847804 (E.D. Pa. Oct. 14, 2021) (dismissing state created danger claim); *Lansberry*, 356 F. Supp. 3d at 498-503 (dismissing Due Process claim); *G.S. v. Penn-Trafford Sch. Dist.*, 813 F. App'x 799, 803 (3d Cir. 2020) (affirming dismissal of state created danger claim); *Bridges ex rel. D.B. v. Scranton Sch. Dist.*, 66 F. Supp. 3d 570, 585-88 (M.D. Pa. 2014), *aff'd* 644 F. App'x 172 (3d Cir. 2016) (substantive due process claim).

[104]   *Moore*, 471 F. Supp. 3d at 660.

[105]   *Id.*

Accordingly, the Court will deny Defendant's Motion to Dismiss Count V as it relates to Equal Protection.

## C.   Procedural Due Process

To state such a claim, Plaintiffs "must allege that [the Minor Students] [were] deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property and that the available procedures did not provide due process of law."[106] "Critically, the deprivation of the protected interest must be attributable to the [School] District, not a private actor."[107]

Defendants argue that Plaintiffs' Procedural Due Process claims fail because (1) they did have an opportunity to be heard and (2) the deprivation was predicated on the conduct of private actors.[108]

In its prior Opinion, the Court agreed on the first point: "While the [First] Amended Complaint argues that Defendants did not follow the School District's policies and procedures, it is also replete with examples of Plaintiffs and the Minor Students having a dialogue with various individuals within the School District, which included phone calls, videoconferences, and in-person meetings."[109] In their

---

[106] *Thompson v. State of Del. Dep't of Servs. for Child., Youth & Their Fams.*, 44 F.4th 188, 194 (3d Cir. 2022) (internal quotation marks omitted).

[107] *Monn v. Gettysburg Area Sch. Dist.*, 553 F. App'x 120, 123 (3d Cir. 2014) (citing *Phila. Police & Fire Ass'n for Handicapped Children, Inc. v. City of Philadelphia,* 874 F.2d 156, 169 (3d Cir. 1989)).

[108] BIS 57-60.

[109] FAC Op. 20.

Second Amended Complaint, Plaintiffs add allegations regarding a meeting with the School Board to discuss the harassment which never materialized because the Defendants failed to share information with the Plaintiffs.[110]

These allegations give rise to the inference that the Defendants' actions deprived Plaintiffs of the opportunity to have a productive meeting with the School Board prior to NW withdrawing from JSASD.[111] Put differently, NW was denied a meaningful opportunity to be heard by the School Board prior to being deprived of his entitlement to a public education at JSASD.[112] Thus, the facts of this case are distinguishable from others where courts have found that "it would make no sense to apply the[] standards of procedural due process . . . and suggest that the defendant should have provided the plaintiff with the opportunity to be heard before [being bullied]."[113]

It is an open question what process is due to individuals in Plaintiffs' position.[114] In *Mathews v. Eldridge*,[115] the Supreme Court set out a three-factor balancing test to determine what process is due: "1) the private interests at stake; 2) the governmental interests at stake, including the governmental function involved

---

[110] SAC ¶¶ 216-223.

[111] *Id.*

[112] As to KW, the Court finds that the Second Amended Complaint does not contain sufficient allegations regarding any Individual Defendant to support a claim that JSASD or any Individual Defendant was aware of any plans to form an ethics committee, or that KW was denied an opportunity to be heard by the Defendants.

[113] *Cf.* FAC Op. 19 (citing *Alderette*, 2018 WL 6680576, at *13).

[114] *See Alderette*, 2018 WL 6680576, at *13.

[115] 424 U.S. 319 (1976)

and the fiscal and administrative burdens entailed by additional or substitute requirements; and 3) the fairness and reliability of the existing procedures and the probable value, if any, of any additional or substitute procedural safeguards."[116]

As to the first factor, in the context of student punishment, courts have held that students facing lengthy suspensions may be entitled to names of witnesses and other available evidence.[117] Here, though the Minor Students would not carry the Scarlet Letter of having been subjected to a lengthy suspension or expulsion, the near-term practical impact—being forced to change schools and a potential loss of academic credits—is equally as significant. Therefore, Plaintiffs may have been entitled to more detailed information regarding Defendants' investigations into the reported harassment. As to the second factor, the School District also has a significant interest in the efficient handling of reports of harassment. Further, Defendants' obligations to other students, even those accused of harassment, may preclude it from providing certain information regarding its investigation. As to the third factor, the fairness and reliability of the existing procedures, based on the allegations of the Second Amended Complaint, leaves much to be desired.

Ultimately, the ability for the Court to balance these factors is limited by the lack of any evidentiary record at this stage of the proceedings. The extent to which Defendants could have provided more information or a greater opportunity to be

---

[116] *Furey*, 884 F. Supp. 2d 233, 247 (E.D. Pa. 2012) (citing *Mathews*, 424 U.S. at 334-35).
[117] *Flaim v. Medical College of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005).

heard turns on facts not available to the Court. So to does an analysis of the fairness and reliability of the process provided.

To determine whether NW will have the opportunity to develop such a factual record as to procedural due process, the Court must first determine whether the Minor Students' deprivation is attributable to the Defendants. The Third Circuit has previously held that harassment by students is insufficient to give rise to a procedural due process claim.[118] However, in this case, NW has alleged that he was forced to withdraw from JSASD because Defendants acquiesced to the harassment and then encouraged him to transfer schools. Further, NW has also alleged that he was pressured to change his schedule, discouraged by Principal Keen from reporting incidents of harassment, and changed from the freshman to the varsity football team which are deprivations that are, at least in part, attributable to Defendants.

As Plaintiffs concede, the unsettled state of the law as to the process due to those in their position entitles the Individual Defendants to qualified immunity as to those claims. However, as to NW, the Second Amended Complaint contains allegations sufficient to state a claim against the School District for denial of due process.

---

[118] *Monn*, 553 F. App'x at 123.

Therefore, the Court will grant Defendants' Motion to Dismiss Count III as to both KW and NW and Count V (procedural due process) as to KW and deny the Motion to Dismiss Count V (procedural due process) as to NW.

### D.     Substantive Due Process

Two exceptions exist to that general rule that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."[119] First, a school may have a duty to protect against harm from third parties when the "special relationship exception" applies—that is, "when a special relationship has been established because 'the State takes a person into its custody and holds him there against his will.'"[120] Second, a duty may be imputed to a school where the "state-created danger exception" applies, which occurs when "the state's own actions create the very danger that causes the plaintiff's injury."[121] Neither exception applies here.

With respect to the first exception, the allegations of the Second Amended Complaint do not give the Court cause to revisit its prior finding that Plaintiffs have failed to plead a special relationship between Plaintiffs and Defendants.[122]

With respect to the second exception, to adequately allege "state-created danger," a plaintiff must allege:

---

[119] *Morrow*, 719 F.3d at 166 (quoting *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 197 (1989)) (brackets and ellipsis omitted).

[120] *Id.* at 167 (quoting *DeShaney*, 489 U.S. at 199-200).

[121] *Id.*

[122] FAC Op. 21; *see also* BIO 53 (continuing to argue a special relationship existed merely "to preclude waiver" of the argument).

1) the harm ultimately caused was foreseeable and fairly direct;

2) a state actor acted with a degree of culpability that shocks the conscience;

3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.[123]

As discussed above, the Court has found that certain of Plaintiffs' claims as pleaded in the Second Amended Complaint are sufficient to state a claim because Plaintiffs have clarified their allegations that the Defendants were deliberately indifferent to racial discrimination. In so doing, the Court rejected the Defendants' arguments that they cannot be liable in the absence of an affirmative acts. The Court also distinguished several of Defendants' cited authorities on that point as discussing state created danger claims. As Plaintiffs acknowledge, the Third Circuit's holding in *Morrow*, dissents notwithstanding, "that failures to act do not equate with affirmative acts" is controlling.[124] Here, the Second Amended Complaint does not allege any affirmative acts taken by any Defendant which rendered Plaintiffs more vulnerable to harassment, let alone any acts which shock the conscience.

---

[123] *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 242 (3d Cir. 2016) (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)).
[124] BIO 59.

Accordingly, the Court will grant the School District's Motion to Dismiss Count IV.

## IV.    CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss the Second Amended Complaint is granted in part and denied in part. For clarity, the remaining claims are Counts I, II, and V as to NW, and KW's Count V equal protection claim.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge